J-A27017-22

2023 PA SUPER 34

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ISAIAH CHRISTIAN ADORNO | : | No. 57 MDA 2022 |

Appeal from the Order Entered December 16, 2021
In the Court of Common Pleas of Lackawanna County Criminal Division at
No(s):  CP-35-CR-0000044-2021

BEFORE:  DUBOW, J., McLAUGHLIN, J., and COLINS, J.[*]

OPINION BY McLAUGHLIN, J.:                    **FILED:  MARCH 3, 2023**

The Commonwealth appeals from the order granting Isaiah Christian Adorno's motion to suppress. It maintains that probable cause existed to search Adorno's home. We reverse and remand for further proceedings.

This appeal stems from the grant of a motion to suppress evidence – a gun – following the execution of a search warrant at Adorno's residence. At a hearing on the motion, Adorno argued that police searched his home without probable cause, that the search was based on false information, and that it exceeded the parameters set forth in the search warrant.

At a suppression hearing, the Commonwealth presented the testimony of an affiant for the application for the warrant, Officer Peter Petrucci of the Blakely Borough Police Department. He testified that an officer from the Scranton Police Department had contacted him about Adorno. N.T., Omnibus

_____

[*] Retired Senior Judge assigned to the Superior Court.

Hearing, 10/27/21, at 6, 7. The Scranton officer told Officer Petrucci that he had observed a Facebook Live video by a user named "Zay-Yaho," whom he later identified as Adorno. *Id.* at 7. In the video, Adorno was dancing while holding a firearm. *Id.* He could also be seen loading and unloading the firearm.[1] *Id.* at 11-12. Officer Petrucci testified that he could see from the video that Adorno was in an apartment. *Id.* at 7. Officer Petrucci learned that Adorno lived at 309 Laurel Street in Archbald in Lackawanna County. *Id.* Officer Petrucci testified that another officer, Officer Matthew Carter, contacted the owner of 309 Laurel Street, Thomas Pratico.[2] *Id.* at 8. Officer Carter showed Pratico the Facebook video, and Pratico told Officer Carter that Adorno lived at the property and "that residence in the video was 309 Laurel Street[.]" *Id.* at 9. Pratico also informed officers that Adorno was still residing at the location. *Id.* at 15.

Officer Petrucci testified that he conducted a background check on Adorno and discovered that he was ineligible to possess a firearm. *Id.* at 11. Officer Petrucci then completed an application for a search warrant for Adorno's apartment at 309 Laurel Street. *Id.* at 13. The Commonwealth admitted the application into evidence. *Id.* at 14.

---

[1] The video is not included in the certified record. Any information about the contents of the video is based on the notes of testimony from the suppression hearing.

[2] Pratico's name is spelled "Pratyko" in the notes of testimony but "Pratico" in the affidavit of probable cause. As the parties' briefs spell it "Pratico," we have used that spelling.

In the affidavit of probable cause supporting the application, Officer Petrucci stated that the Scranton police officer had informed him of the Facebook Live video and had given him a copy of a recording of part of the video, which depicted Adorno possessing a firearm inside his "home at 309 Laurel St [sic] Archbald, PA 18403." Application for Search Warrant and Authorization, dated 12/22/20, at 3. He averred that the Scranton officer had also showed him other images and videos from Snapchat that showed Adorno "possessing two other firearms and illegal narcotics inside his home." *Id.* A criminal check revealed that Adorno was ineligible to possess a firearm because of a Florida conviction. *Id.*

Officer Petrucci explained in the affidavit that he had identified the owner and landlord of 309 Laurel Street as Thomas Pratico. *Id.* at 4. A second affiant on the application, Officer Carter, had shown Pratico the Facebook Live video and "Mr. Pratico positively identified the room in the video as the kitchen of his home at 309 Laurel St [sic] Archbald." *Id.* at 4. The affidavit concludes, "Based on the video evidence and other social media posts as well as the statement from Mr. Pratico it is probable that Mr. Adorno is in possession of a firearm where he is not authorized by law to do so." *Id.*

Officer Petrucci testified that the warrant was granted. He said that when police executed it, they recovered the gun depicted in the video, as well as two other firearms and a large amount of prescription medication. *See* N.T. at 15.

On cross-examination, defense counsel questioned Officer Petrucci about differences between the kitchen in the video and photos of what the officer agreed was the apartment. The examination highlighted a table seen in the video but not in the photos, and differences in the colors of the walls, window trim, and cabinets. *See id.* 25-26, 27, 31. On redirect, Officer Petrucci said the room in the video was in Adorno's apartment, "right outside of the kitchen." *Id.* at 28.

A friend of Adorno's, Savannah Albakri, testified for the defense. *Id.* at 34. She said that the Facebook video was taken in the kitchen of her apartment but that she was not present at the time. *Id.* at 37, 39, 40. She also testified that she had been to Adorno's apartment on numerous occasions and that there was no room off the kitchen. *Id.* at 36. Defense counsel presented her with pictures of her apartment as well as Adorno's apartment. Albakri testified that the photos, which showed white walls with brown trim, light brown cabinets, a countertop with no streaks, and a table in the kitchen, were of her apartment. *Id.* at 37-39.

The trial court granted the suppression motion. It pointed out that the police had limited their investigation of the setting of the Facebook video to an interview of Adorno's landlord and stated that "[t]here is nothing more to determine that the alleged crimes took place" at Adorno's apartment. *See* Opinion, filed 12/15/21, at 8. It found that "testimony was presented that negates that" Adorno recorded the video inside his apartment. *Id.* It likened the instant case to *Commonwealth v. Way*, 492 A.2d 1151 (Pa.Super.

1985), and **Commonwealth v. Nicholson**, 262 A.3d 1276 (Pa.Super. 2021). It concluded that "although probable cause may exist for the crime that took place" in the Facebook Live video, "there is no substantial nexus to that crime taking place at the premise [sic] to be searched, *i.e.* [Adorno's] residence[.]" **Id.** This timely appeal followed.

The Commonwealth raises the following issues:

1. Whether the issuing authority had a substantial basis for concluding that probable cause existed based on the information available to the police officers at the time the warrant was issued.

2. Whether the factual mistake on the face of the warrant amounted to a deliberate and material misrepresentation by the affiants that operated to invalidate the otherwise valid warrant?

3. Whether the probable cause in the four corners of the search warrant affidavit substantiated a legal valid search of the residence that was listed on the warrant.

Commonwealth's Br. at 4.

When reviewing the grant of a motion to suppress, we "consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted." **Commonwealth v. Korn**, 139 A.3d 249, 252 (Pa.Super. 2016) (citation omitted). We are bound by the factual findings of the suppression court that are supported by the record. **Id.** We review the legal conclusions *de novo*. **See id.** at 252-53. Here, the factual findings of the court

are not contested. However, the Commonwealth challenges the court's legal conclusions.

The Fourth Amendment of the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution protect against unreasonable searches and seizures. "In order to secure a valid search warrant, an affiant must provide a magistrate with information sufficient to persuade a reasonable person that there is probable cause for a search." *Commonwealth v. Baker*, 24 A.3d 1006, 1017 (Pa.Super. 2011) (citation omitted). "Probable cause exists where the facts and circumstances within the affiant's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that a search should be conducted." *Commonwealth v. Jones*, 988 A.2d 649, 655 (Pa. 2010) (citation omitted). When considering whether probable cause exists, we consider the totality of the circumstances. *See Commonwealth v. Clark*, 602 A.2d 1323, 1325 (Pa.Super. 1992).

The Commonwealth argues that the trial court erred in granting suppression. In its first and third issues, it maintains that the warrant application demonstrated probable cause to search Adorno's home. In its second issue, it contends that since the factual mistake of the location seen in the video was not deliberate and knowing, the warrant was still valid. We address the Commonwealth's claims regarding probable cause first.

**Probable Cause**

In its first and third issues, the Commonwealth maintains that probable cause existed to search Adorno's apartment. It points out that the owner of the building, Pratico, identified the apartment in the Facebook Live video as Adorno's apartment at 309 Laurel Street. It also argues that "officers had no reason to question the information given to them by the owner/landlord[.]" Commonwealth's Br. at 17. The Commonwealth maintains that the averments within the four corners of the warrant application established probable cause.

In granting suppression, the lower court relied on this Court's decisions in **Way** and **Nicholson**. In **Way**, an informant arranged a drug sale by phone. The informant drove to a location and Way arrived in a van. After completing the transaction, officers followed Way back to a particular intersection. The informant told police that Way lived in a building at the intersection. Officers obtained a warrant to search Way's home and when they conducted the search, they found incriminating evidence. On appeal, we found merit in Way's claim that counsel had been ineffective for failing to file a motion to suppress. We concluded that the search warrant was invalid because there was a "lack of substantial nexus between the street crime and the premises to be searched." **Way**, 492 A.2d at 1154. We explained that the search warrant "did not contain sufficient facts to believe that drugs would be found on the premises to be searched." **Id.**

**Nicholson** also involved a drug sale involving an informant. The informant told police that Nicholson was selling drugs and drove a blue Dodge

Caliber, and the informant gave police Nicholson's address. Officers had the informant conduct a controlled buy with Nicholson, and they observed Nicholson leave his home and make two stops en route to the location for the buy. Afterward, Nicholson drove back to his residence. Officers obtained a search warrant for Nicholson's home and executed it. The Court of Common Pleas suppressed evidence seized from Nicholson's home, and we affirmed. We concluded that the warrant was not supported by probable cause. We noted that the informant never stated that Nicholson was selling drugs from his home, and the police did not observe Nicholson leaving his home and going directly to the buy location. We explained that "there must be something in the affidavit that links the place to be searched directly to the criminal activity," and that in this case "no such nexus was shown here[.]" **Nicholson**, 262 A.3d at 1282.

We conclude that the court here erred in its reliance on **Way** and **Nicholson**. Here, the warrant application on its face set forth sufficient information to establish probable cause to search Adorno's apartment at 309 Laurel Street. According to the affidavit of probable cause, Adorno's landlord, Pratico, told police that Adorno currently resided in the apartment and identified the kitchen in the video as being in Adorno's apartment. The affidavit also noted that the social media posts showed Adorno with firearms and illegal narcotics inside his home. Thus, unlike **Way** and **Nicholson**, the warrant application showed that police had sufficient facts to believe that there was evidence of crimes in what Pratico told them was Adorno's home. Pratico's

statement was sufficiently reliable for officers to rely on it. The fact that he owned the building and was Adorno's landlord was enough for them to credit his identification of the apartment in the video.

**Factual Mistake**

The suppression court apparently credited the evidence suggesting that the apartment in the Facebook video was not Adorno's apartment, but rather Albakri's apartment. The Commonwealth concedes the mistake. It states that during the suppression hearing, "[i]t came to light . . . that the place described in the search warrant, and searched, was not the same place that was depicted in the background of" the Facebook Live video. Commonwealth's Br. at 17. It claims that officers "reasonably believed" that the residence searched was the same as the residence in the video. The Commonwealth argues that, despite the error, the search warrant was still valid because this mistake was not knowing or deliberate. It states that officers did not become aware of the error until Albakri's testimony.

"If a search warrant is based upon an affidavit containing deliberate or knowing misstatements of material fact, the search warrant is invalid, unless probable cause exists notwithstanding any deliberate omissions or misrepresentations of fact." *Commonwealth v. Burno*, 154 A.3d 764, 782 (Pa. 2017). *See also Clark*, 602 A.2d at 1325.

In *Franks v. Delaware*, 438 U.S. 154, 171 (1978), the United States Supreme Court held that a defendant may attack the validity of a warrant on the basis that it contained untruthful information. A defendant attacking a

warrant on this basis must allege that the warrant contained statements "of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof." *Id.*

We applied *Franks* in *Commonwealth v. Gomolekoff*, 910 A.2d 710, 715 (Pa.Super. 2006). There, police obtained a search warrant for the defendant's home, based on two emails. When officers executed the search, they seized four computer towers. However, the two emails were not found on the towers. The defendant insisted the warrant was therefore invalid and he was entitled to suppression. We cited the *Franks* rule regarding challenges to warrants based on the inclusion of false information. We concluded the defendant's argument lacked merit because he had failed to proffer any evidence that the affiant of the warrant had "made deliberately false statements, or made statements with a reckless disregard for the truth." *Id.*

We reached a similar result more recently in *Commonwealth v. Andrews*, 213 A.3d 1004, 1014-15 (Pa.Super. 2019). There, the trial court had denied the defendant's motion to suppress based on the inclusion in the warrant application of a material misstatement of fact. We affirmed because the defendant had failed to make an offer of proof that the police "made deliberately false statements or made statements with a reckless disregard for the truth." *Id.*

Here, in his pretrial motion, Adorno claimed that the search of his apartment "was based upon materially false information that was contained in the Affidavit of Probable Cause." Omnibus Pretrial Motion, at ¶ 5. However,

he did not claim that Officer Petrucci made deliberately false statements or made statements with a reckless disregard for the truth. Furthermore, Adorno did not make an offer of proof of such. Therefore, the court erred in granting Adorno's suppression motion. *See Gomolekoff*, 910 A.2d at 715; *Andrews*; 213 A.3d at 1015. We therefore reverse the order granting Adorno's suppression motion.

Order reversed. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/03/2023