J-S46026-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| WILLIAM SMOOT | : | |
| | : | |
| Appellant | : | No. 1286 WDA 2023 |

Appeal from the Judgment of Sentence Entered September 20, 2023
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0000568-2021

BEFORE: LAZARUS, P.J., BOWES, J., and KING, J.

MEMORANDUM BY BOWES, J.: **FILED: February 26, 2025**

William Smoot appeals from the aggregate judgment of sentence of 177 to 354 months of imprisonment followed by ten years of probation imposed following his convictions for participating in a string of robberies in the Pittsburgh area. We affirm.

We glean the following facts from the certified record. In January 2021, the City of Pittsburgh police department was investigating a series of gas station and convenience store robberies. At each scene, surveillance cameras captured at least two masked individuals who stole cash and Newport cigarettes while brandishing a firearm. The assailants arrived and escaped in a maroon Chrysler 200. Appellant became a prime suspect based on the victims' physical descriptions of the thieves, the security footage, and the group with whom Appellant was known to associate. Although the suspects

wore masks, Detective Christopher Kertis of the City of Pittsburgh Police Department identified Appellant in the security footage from his skin tone, round eyes, unibrow, smaller stature, and his familiarity with at least one of Appellant's accomplices identified in the footage.

After the fourth robbery, wherein one of the suspects demanded that Newport cigarettes be placed in a black plastic bag, a license plate reader ("LPR") caught the Chrysler fleeing on a nearby street, providing the officers with a way to identify its license plate number and the vehicle's owner, Danyel House. The following morning, another LPR detected the vehicle on Route 65. Detective Kertis and his partner, Detective Joseph Lippert, ventured out in pursuit in an unmarked police cruiser. They initially spotted the Chrysler at a carwash, where a woman, later identified as Ms. House, was cleaning the interior. Due to traffic, the detectives could not reach Ms. House before she returned to the car and drove away. She began to travel to the east end of the city, but the detectives again lost her in traffic. Officer Lippert then contacted Detective Michael Catanzaro of the Borough of Wilkinsburg Police Department, located in the east end of the city, for assistance.

Detective Catanzaro learned that Appellant was issued a citation in October 2020 while driving a different automobile owned by Ms. House, and the citation listed his address as 7449 Race Street. The detective relayed this information to Detective Lippert over the phone while he and Detective Kertis remained in pursuit. However, he miscommunicated that Appellant was

driving the Chrysler when issued the citation. Since his office was much closer to Appellant's address, Detective Catanzaro was asked to conduct surveillance while Detectives Kertis and Lippert were on their way. Detective Catanzaro arrived at the residence shortly thereafter and spotted the Chrysler parked out front. About ten minutes later, he communicated to the detectives that Appellant was exiting the residence with a woman, later identified as Ms. House, and driving away in the suspect automobile.

All detectives pursued the vehicle, and Detective Kertis identified Appellant as the driver. Following protocol, they called for backup to arrive in marked police vehicles and conducted a stop. Once officers reached Appellant, Detective Kertis observed a carton of Newport cigarettes in the backseat of the car. The officers arrested Appellant and Ms. House. During a pat-down, detectives found marijuana, baggies of pills, and over $500 in cash on Appellant. In conducting a sweep, the officers discovered a black plastic bag filled with cartons of Newport cigarettes in the trunk of the vehicle, consistent with the robbery that occurred the previous evening. The vehicle was towed and inventoried. Ms. House informed the officers that she was Appellant's girlfriend, and that she had stayed with Appellant at the Race Street home the previous evening.

Detective Kertis authored a search warrant for the Chrysler, and Detective Lippert prepared one for Appellant's residence seeking the stolen money and cigarettes, the firearm used in the robberies, and the articles of

clothing the suspects wore in the surveillance footage. In the affidavits of probable cause for both warrants, the detectives incorrectly stated that in October 2020 Appellant "was cited while driving the maroon Chrysler 200." *See* Court Exhibit 1-2. Detective Lippert testified that he later learned that Detective Catanzaro erroneously relayed this information to him, but he believed it was accurate at that time. Detective Lippert also assisted Detective Kertis in preparing his affidavit for the warrant for the vehicle, and subsequently repeated this incorrect information. Detective Lippert later testified that the situation rapidly evolved, and he was not placed on the case until the day that they caught Appellant.

The warrants were issued, and upon their search of the Race Street residence, detectives seized a Glock 19 in one of the bedrooms that matched the firearm used in the robberies. Detective Lippert further identified the firearm from Appellant's Facebook photos. The serial number on the Glock had been reported as stolen. In the bedroom where the gun was discovered, the officers recovered indicia of Appellant's residency there, including credit cards in his name, and bills and letters addressed to him. Officers further confiscated clothing that mirrored the apparel seen in the security videos from various places throughout the home, including the bedroom where the firearm was recovered. The search of the Chrysler's trunk revealed the above-mentioned cigarettes and various items that belonged to Appellant, as well as additional cartons of Newport cigarettes throughout the vehicle.

Appellant was charged with the aforementioned offenses, and the matter proceeded to a preliminary hearing in which three store clerk victims and the detectives testified. Appellant filed a motion to suppress the physical evidence recovered during the searches of the vehicle and residence, arguing that neither warrant was supported by probable cause. The court held a hearing at which the parties relied upon the preliminary hearing transcript and the affidavits of probable cause supporting the warrants. The court denied the motion, and after receiving new counsel, Appellant filed an omnibus pretrial motion seeking, *inter alia*, reconsideration. The court held another suppression hearing wherein the detectives testified, but ultimately denied the second motion.

At the jury trial, Detective Lippert established the above facts and narrated security footage of the robberies. Detective Kertis was unavailable to testify, but Detective Edward Fallert of the City of Pittsburgh Police Department, who also assisted in the investigation, attested to the LPR technology that captured the license plate number for the Chrysler near the scene of one of the robberies. He also explained that the Glock 19 that police discovered in the Race Street home was reported stolen by someone who did not reside there, it was the same firearm used in the robberies, and no one in residence owned it.

One of the victims, Joel Lang, testified to his experience as a store clerk during one of the robberies. He chronicled some of the security footage as well, describing to the jury how the suspect held a gun to his head and demanded money while simultaneously stealing Newport cigarettes. Mr. Lang described the assailant as having distinctive eyebrows and a mustache poking above his mask, and recounted the items of clothing he wore.

The defense presented Appellant's mother, Qadira Daniels, who testified that Appellant's grandmother owns the Race Street residence, a three-bedroom home. She explained that five people lived in the house at the time of Appellant's arrest, including the mother's cousin, but that Appellant did not live there. She stated that Appellant would occasionally sleep on the living room couch, but Ms. House did not stay with him if he did sleep over. Ms. Daniels further testified that, to her knowledge, her cousin purchased the Glock 19 and was licensed to conceal carry, and she did not know that the gun was reported stolen. Appellant produced no evidence that the mother's cousin purchased the firearm.

At the conclusion of trial, the jury convicted Appellant of three counts each of terroristic threats and robbery, and one count each of possession of firearm prohibited, receiving stolen property as to the cigarettes, and

conspiracy to commit robbery.[1]  Appellant thereafter filed a post-sentence motion, which the court denied.  This timely appeal followed, and both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant presents the following questions for our determination, which we have reordered:

> I.    Was the evidence presented at trial insufficient to establish beyond a reasonable doubt that [Appellant] was the person who committed the offenses?
>
> II.   The evidence was insufficient to sustain the conviction for possession of firearm prohibited and receiving stolen property insofar as the Commonwealth failed to prove beyond a reasonable doubt that [Appellant] constructively possessed the gun found in the residence.
>
> III.  Did the police lack probable cause to conduct the felony traffic stop and arrest [Appellant] without a warrant?
>
> IV.   Did the court err in denying the motion to suppress where the initial warrantless search and seizure of the vehicle and the items found in the vehicle driven by [Appellant] at the time of the felony stop was unconstitutional and was not justified by an exception to the warrant requirement?
>
> V.    Were the searches of the residence, vehicle[,] and [Appellant]'s cellphone unlawful insofar as the warrants for the residence, vehicle and cellphone were based on a material misrepresentation that the affiants made deliberately, or with a reckless disregard for the truth; and the affidavits did not provide a substantial basis for concluding that probable cause existed?

Appellant's brief at 13 (capitalization altered).

---

[1] The parties stipulated that Appellant had a disqualifying offense pursuant to 18 Pa.C.S. § 6105.  **See** N.T. Jury Trial, 6/8/23, at 258, 366.  The jury acquitted Appellant of one count each of receiving stolen property as to the firearm and possession of a controlled substance.

The following legal principles guide our analysis of Appellant's first two issues, which challenge the sufficiency of the evidence to support his convictions. This Court's review of such a question is as follows:

> A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim, the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.
>
> In applying the above test, we may not reweigh the evidence and substitute our judgment of the fact-finder.

*Commonwealth v. Holmes*, 327 A.3d 307, 311-12 (Pa.Super. 2024) (cleaned up). The Commonwealth "need not establish guilt to a mathematical certainty" and "may sustain its burden by means of wholly circumstantial evidence." *Commonwealth v. Delamarter*, 302 A.3d 1195, 1201 (Pa.Super. 2023). Furthermore, our standard of review with respect to questions of law "is *de novo* and our scope of review is plenary." *Commonwealth v. Leatherby*, 116 A.3d 73, 84 (Pa.Super. 2015).

We address Appellant's first sufficiency challenge with respect to his convictions for robbery, conspiracy, and terroristic threats grounded on the

evidence of his identity.[2] "Evidence of identification need not be positive and certain to sustain a conviction." ***Commonwealth v. Edwards***, 229 A.3d 298, 306 (Pa.Super. 2020), *aff'd on other grounds*, 256 A.3d 1130 (Pa. 2021) (cleaned up). Although common clothing items and generalized physical features are typically not enough to sustain a conviction, "such evidence can be used as other circumstances to establish the identity of a perpetrator." ***Id***.

Appellant argues that the Commonwealth failed to prove beyond a reasonable doubt that he was one of the robbers. ***See*** Appellant's brief at 58-61. He claims that it was not enough that the clothing items seen in the surveillance footage were found in the residence, or that the same brand of stolen cigarettes was discovered in the Chrysler. ***Id***. at 59-61. He maintains that the robbers wore masks, and hence the victims, detectives, and jurors could not discern facial features. ***Id***. at 58-59.

The evidence was sufficient for the jury to find beyond a reasonable doubt that Appellant was the individual who committed the offenses. The Commonwealth played the surveillance footage of the robberies for the jury so they could observe the suspects. The jurors also heard from the officers that they found items of clothing in Appellant's residence that matched the

---

[2] To the extent that Appellant challenges the weight of the identification evidence, he did not preserve this argument, and it is waived. ***See*** 1925(b) Statement, 11/27/23, at ¶¶ 10.G-H. (arguing only that the convictions were not supported by sufficient evidence); ***see also*** Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the [Rule 1925 s]tatement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived.").

apparel seen in the security footage, and they were shown photos of those clothing items. Mr. Lang also recalled the unique features of the robber who pointed a gun in his face, and the detectives testified that he could recognize Appellant from his skin tone, round eyes, unibrow, and small stature. Thus, the jury could determine for itself whether Appellant was the individual who committed the offenses based on this circumstantial evidence. **See Holmes**, 327 A.3d at 311-12. It did conclude as such, and we have no basis to question its determination where the record supports it. Therefore, Appellant's argument is meritless.

Appellant further contests the sufficiency of the evidence related to his possession of the firearm.[3] Our Crimes Code provides that "[a] person who has been convicted of an offense enumerated in subsection (b) . . . shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth." 18 Pa.C.S. § 6105(a).

---

[3] Appellant also appears to challenge the sufficiency of the evidence pertaining to his conviction for receiving stolen property in this section of his brief. **See** Appellant's brief at 64 ("the evidence was insufficient to sustain the convictions for possession of firearm prohibited and receiving stolen property") (capitalization altered). However, he was acquitted of receiving stolen property of the firearm, and his conviction for receiving stolen property was for the cigarettes. To the extent Appellant challenges his conviction for receiving stolen property of the cigarettes, he fails to develop that argument herein. Accordingly, it is waived. **See Commonwealth v. Taylor**, 277 A.3d 577, 590 (Pa.Super. 2022) ("It is well-settled that the failure to develop an adequate argument in an appellate brief may result in waiver of the claim under Pa.R.A.P. 2119.").

- 10 -

Possession may be demonstrated through constructive means where a defendant is not in physical possession of a prohibited item. **See Commonwealth v. Parrish**, 191 A.3d 31, 36 (Pa.Super. 2018). Under that theory, "the Commonwealth must establish facts from which the trier of fact can reasonably infer that the defendant exercised dominion and control over the contraband at issue." **Id**. Constructive possession is established by analyzing the totality of the circumstances and may be wholly based on circumstantial evidence. **Id**. The fact that more than one person may have access to the prohibited item where it is found in an area of joint control or access does not defeat constructive possession. **See Commonwealth v. Wright**, 255 A.3d 542, 554 (Pa.Super. 2021).

Appellant maintains that the Commonwealth did not prove that he possessed the firearm because he transiently resided in the Race Street home. **See** Appellant's brief at 65. He argues that other individuals lived in the house and had equal access to the room where the Glock was discovered. **Id**. at 66-67. His mother attested to these details, he contends, and she claimed that the gun belonged to her cousin, not Appellant. **Id**.

The jury had sufficient basis in which to credit the detectives' testimony over that of Appellant's mother that he resided in the Race Street home. The items that were found in the same bedroom as the Glock 19, such as Appellant's credit cards, bills, and mail, further supported the conclusion that he had lived in that room. The Glock was also identified as the firearm used

in the robberies, and as discussed, the jury had ample reason to conclude that Appellant was the assailant brandishing the gun. The jury thus had sufficient circumstantial evidence to conclude that Appellant asserted dominion and control over the firearm. *Parrish*, 191 A.3d at 36. Appellant is therefore not entitled to relief on this basis.

We move to Appellant's final three issues, which contest the trial court's denial of his motions to suppress. The following legal principles govern our review:

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. We may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the [suppression] record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

*Commonwealth v. Thomas*, 273 A.3d 1190, 1195 (Pa.Super. 2022).

We begin with Appellant's protestation of the warrantless stop and arrest. Pursuant to the protections safeguarded by the Fourth Amendment, this Commonwealth recognizes three levels of interaction between police officers and citizens: "(1) a mere encounter; (2) an investigative detention . . .; and (3) a custodial detention." *Commonwealth v. Jefferson*, 256 A.3d 1242, 1247-48 (Pa.Super. 2021). A mere encounter does not require an officer to have any degree of suspicion, an investigative

detention requires reasonable suspicion of criminal activity, and a custodial detention requires probable cause. *See Thomas*, 273 A.3d at 1196.

An officer has reasonable suspicion justifying an investigative detention where he "is able to articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity." *Commonwealth v. Rice*, 304 A.3d 1255, 1261 (Pa.Super. 2023). Probable cause for a warrantless arrest, on the other hand, exists where "the facts and circumstances within the knowledge of the arresting officer are reasonably trustworthy and sufficient to justify a person of reasonable caution in believing that the arrestee has committed an offense." *Commonwealth v. Floyd*, 313 A.3d 1061, 1065 (Pa.Super. 2024).

A traffic stop generally constitutes an investigative detention requiring reasonable suspicion of unlawful activity, and "carries an official compulsion to stop and respond, but the detention is temporary, unless it results in the formation of probable cause for arrest, and does not possess the coercive conditions consistent with a formal arrest." *Commonwealth v. Ross*, 297 A.3d 787, 792 (Pa.Super. 2023). Where the circumstances of the stop, however, provide the officer with a reasonable belief that an offense has been committed, the officer has probable cause to make a custodial arrest. *See Commonwealth v. Bozeman*, 205 A.3d 1264, 1277 (Pa.Super. 2019).

Appellant maintains that the detectives did not have probable cause to stop or arrest him because his connection to the Chrysler and the robberies was slim. *See* Appellant's brief at 39-40. He contends that the police did not obtain the vehicle's license plate number from the scenes of the robberies, and that he was only "observed briefly driving such a vehicle owned by his girlfriend[.]" *Id*. at 42-43. He also claims that Detective Lippert merely testified to Appellant's identity in vague terms insofar as Appellant "was very recognizable[,]" and he had "uniquely-shaped eyes and a unibrow." *Id*. at 43.

The trial court reasoned in its Rule 1925(a) opinion that "the officers had ample reasonable suspicion" to stop Appellant based on the following circumstances:

> [A]t the time of the stop, the officers knew that: (i) [Appellant] was associated with the registered owner of the suspect vehicle that was present at the scene of all four . . . robberies; (ii) [Appellant] was known to be a close associate of one of the other robbery suspects who was recognized on the surveillance footage, thereby making [Appellant] the "number one suspect" in the investigation; (iii) [Appellant] was recognizable by police on the surveillance footage, despite the mask he was wearing, because the mask did not conceal his entire face, and it left his stature, build, and uniquely-shaped eyes and unibrow exposed; and (iv) [Appellant] was driving the suspect vehicle just hours after the last robbery occurred.

Trial Court Opinion, 2/29/24, at 16-17. Moreover, the court confirmed that the officers had probable cause to arrest Appellant because his physical attributes matched those of the victims' descriptions and the surveillance footage, he was driving the Chrysler that was used as a getaway car in each

- 14 -

of the robberies, and Detective Kertis spotted the same brand of stolen cigarettes in the vehicle. *Id*. at 17-18.

The court did not err in its analysis. Multiple detectives testified that a maroon Chrysler was used as a getaway car in each of the robberies. An LPR identified its license plate number shortly after and nearby one of the robberies. The same Chrysler was at Appellant's address the following day, and he was seen exiting this residence and driving the vehicle. Detective Kertis had also named Appellant as a prime suspect. In light of their experience, the foregoing information provided the officers with not only reasonable suspicion, but probable cause to conclude that Appellant was involved in the robberies, and were thus justified in stopping him. ***See Ross***, 297 A.3d at 792. Likewise, the detectives had probable cause to arrest Appellant pursuant to the foregoing, coupled with the fact that Detective Kertis saw the same brand of cigarettes that were stolen in each of the robberies in the backseat. ***See Bozeman***, 205 A.3d at 1277. Accordingly, the court did not err in concluding that the warrantless stop and arrest were proper.

We next address Appellant's argument that the officers unlawfully seized and searched the of Chrysler without a warrant. A warrantless search or seizure is "presumptively unreasonable subject to a few specifically established, well-delineated exceptions," including, relevantly, the doctrines of plain view and inevitable discovery. ***Commonwealth v. Saunders***, 326 A.3d 888, 897 (Pa. 2024).

Pursuant to the plain view doctrine, "the police may effectuate a warrantless seizure of an item if: (1) the police view the item from a lawful vantage point; (2) the incriminating nature of the item is immediately apparent; and (3) the police have a lawful right of access to the item." *Id*. Whether an item is incriminating in nature is "coextensive with probable cause[,]" which requires "facts and circumstances within the officer's knowledge [that] are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed." *Id*. (cleaned up). Police have lawful right of access to an item where there is "unexpected development of probable cause." *Id*. at 900. In other words, there is lawful access to an object in plain view where the police did not have adequate time to first obtain a warrant. *Id*.

The doctrine of inevitable discovery rests on "the fact that the evidence would have been discovered despite the initial illegality." ***Commonwealth v. Brinson***, ___ A.3d ___, 2024 WL 5037054 at *7 (Pa.Super. 2024) (cleaned up). This doctrine, however, "is not a substitute for the warrant requirement[, and p]olice must demonstrate that the evidence would have been discovered absent the police misconduct, not simply that they somehow could have lawfully discovered it." *Id*. (cleaned up).

Appellant contends that the plain view doctrine did not justify the officer's confiscation of the cigarettes in the backseat. ***See*** Appellant's brief at 36. While Appellant concedes that the officer viewed the cigarettes from a

lawful vantage point, he challenges their incriminating nature because they were a "common" brand, and the officers had an advanced opportunity to obtain a warrant where they knew that the vehicle was connected to the robberies. *Id*. at 35-36. Additionally, he notes that "the Commonwealth may argue that exigent circumstances existed to permit the warrantless search and seizure of the vehicle and the contents[.]" *Id*. at 37. He argues, however, that such an exception would not justify the search of the trunk of the Chrysler and the seizure of the black bag containing cigarettes therein. *Id*. at 37-39.

The court concluded that the plain view doctrine justified the officer's confiscation of the cigarettes in the backseat "that matched the same brand stolen in the robberies" and "served to provide further confirmation of [Appellant]'s identity[.]" Trial Court Opinion, 2/29/24, at 17 (emphasis omitted). The court further determined that it was immaterial whether the officers lawfully searched the trunk and seized the bag of cigarettes where the inevitable discovery doctrine applied, as "any illegally obtained evidence would have been discovered by lawful means through both the inevitable inventory search that would have occurred at the time the vehicle was towed, and through the execution of the search warrant that was subsequently issued."[4] *Id*. at 19.

---

[4] As discussed *infra*, the warrants for the residence and vehicle were supported by probable cause.

We discern no error. The plain view doctrine validated the seizure of the cigarettes in the backseat where the officers had probable cause to believe that the cigarettes were incriminating in nature. They were the same brand that was stolen in all four recent robberies and were inside the same Chrysler that was consistently used as the getaway car. The officers also had lawful control over the cigarettes because they did not have advance notice of probable cause to obtain a warrant for the vehicle. Detective Lippert testified that this was a fast-paced situation with many moving parts, and the officers stopped Appellant shortly after they first observed him drive the Chrysler. **See** N.T. Suppression Hearing, 8/23/22, at 10-11, 14. Therefore, the court correctly concluded that the plain view doctrine applied. **Saunders**, 326 A.3d at 897.

Appellant did not challenge the trial court's conclusion that the inevitable discovery doctrine justified its denial of his suppression motions. Nevertheless, the doctrine supports the court's decision here, where the officers obtained a warrant for the Chrysler and the contents therein, including items stolen in the robberies, such as the cigarettes that a suspect demanded be placed in a black plastic bag. **See Brinson**, 2024 WL 5037054, at *7.[5]

---

[5] Pursuant to our conclusion, we need not address Appellant's alternative argument that exigent circumstances did not justify the search and seizure of the vehicle.

In Appellant's next issue, he claims that a misstatement of fact in the affidavits of probable cause rendered the warrants invalid.[6] Pursuant to the Pennsylvania Constitution, "no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant." Pennsylvania Constitution, art. 1 § 8. Further, "the issuing authority is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Commonwealth v. Green*, 265 A.3d 541, 551 (Pa. 2021) (cleaned up).

This Court has held that "[i]f a search warrant is based upon an affidavit containing deliberate or knowing misstatements of material fact, the search warrant is invalid, unless probable cause exists notwithstanding any deliberate omissions or misrepresentations of fact." *Commonwealth v. Adorno*, 291 A.3d 412, 417 (Pa.Super 2023). Where an appellant attacks the validity of a warrant claiming that it contains untruthful information, he "must allege that the warrant contained statements of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer

_____

[6] Appellant did not raise any argument in his Rule 1925(b) statement relating to the warrant issued for his cellphone. *See* Appellant's 1925(b) Statement, 11/27/23, at ¶¶ E-F (mentioning only that the warrants for the vehicle and residence were not supported by probable cause). Therefore, we address only the preserved arguments as to the warrants for the residence and the vehicle.

of proof." *Id*. (cleaned up). Moreover, "[c]ourts should not invalidate warrants by interpreting them in a hyper-technical fashion." ***Commonwealth v. Rivera***, 316 A.3d 1026, 1033 (Pa.Super. 2024).

Appellant contends that the misstatement that he was driving the Chrysler when he was issued the October 2020 citation was a material misrepresentation made deliberately or with a reckless disregard for the truth. ***See*** Appellant's brief at 48. He claims that Detective Lippert conceded that the mistake was significant because it appeared to connect Appellant to the getaway car used in the robberies. *Id*. at 49. The warrant was not supported by probable cause without this misstatement of fact, Appellant asserts, because there is no other detail establishing a relationship between him and the robberies. *Id*. at 51-52.

In its opinion, the trial court concluded that this error was not deliberate, and probable cause supported the warrant notwithstanding this mistake. ***See*** Trial Court Opinion, 2/29/24, at 27. The court stated that Appellant did not make the requisite proffer of evidence indicating that the statement was intentionally false. ***Id***. Additionally, the warrants were otherwise supported by probable cause because the affidavits provided descriptions of the robbers, explained Appellant's relationship to Ms. House, who owned the Chrysler, stated that Appellant was stopped while driving said vehicle, and noted that the same brand of stolen cigarettes was seen in the car. ***Id***.

Upon review, the court did not err. Appellant has not set forth an offer of proof that the detectives made these assertions knowing that they were false. Rather, Detective Lippert credibly testified that the investigation was fast paced, and what he wrote in his affidavit supporting the warrant for the residence was based on information provided by Detective Catanzaro, which he believed to be accurate at that time. *See* N.T. Suppression Hearing, 8/23/22, at 27-29. He also admitted to passing along this information to Detective Kertis in creating the affidavit to support the warrant for the vehicle, but reiterated that he did not believe that it was incorrect. *Id*.

Even so, the misstatement that Appellant drove the Chrysler when he received the October 2020 citation was not the sole reason that the officers had probable cause for a search of the vehicle and residence. The pertinent information gathered from the citation was not that Appellant drove the Chrysler at that time, rather it was to verify Appellant's address. The detectives were then able to surveil the residence, locate Appellant, observe him drive the vehicle that same day, and thus initiate a stop. Appellant had already been identified as a prime suspect in the investigation, and his driving of the vehicle that day demonstrated his connection to the getaway car. Accordingly, based on a totality of the circumstances, the warrants were supported by probable cause notwithstanding the misstatement of fact. *See Adorno*, 291 A.3d at 417.

In sum, the Commonwealth presented sufficient evidence to prove beyond a reasonable doubt that Appellant was guilty of the offenses upon which he was convicted, and the court did not err in denying Appellant's motions to suppress. Finding no reason to grant relief, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 02/26/2025