J-S19011-21

2021 PA Super 193

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellant :
:
:
:
v. :
:
:
:
ANTOIN TYRELL NICHOLSON : No. 66 WDA 2021

Appeal from the Suppression Order Entered December 15, 2020
In the Court of Common Pleas of Beaver County Criminal Division at
No(s): CP-04-CR-0002507-2019

BEFORE: DUBOW, J., MURRAY, J., and PELLEGRINI, J.*

OPINION BY PELLEGRINI, J.: **FILED: SEPTEMBER 27, 2021**

The Commonwealth of Pennsylvania appeals from an order of the Court of Common Pleas of Beaver County (suppression court) granting Antoin Tyrell Nicholson's (Nicholson) dispositive motion to suppress evidence obtained from a search of his home. Following a hearing on the motion, the suppression court ruled that the evidence was obtained pursuant to an invalid warrant which had been erroneously granted by the Magisterial District Judge. The Commonwealth argues in its appeal that the suppression court erred in finding that the warrant was not supported by probable cause. Finding no merit in these appellate claims, we affirm.

_____

* Retired Senior Judge assigned to the Superior Court.

**I.**

This appeal concerns whether a search warrant issued for Nicholson's home was supported by probable cause. The affidavit of probable cause used to obtain this warrant was authored by Stephen Kelch, a New Brighton Area Police Officer and part of the Pennsylvania Attorney General's Drug Task Force.

Officer Kelch wrote in his affidavit that the New Brighton Police Department's investigation began with a tip from a confidential informant (CI). The CI reported that Nicholson was selling controlled substances, driving a blue Dodge Caliber, and residing at 1235 6th Avenue, New Brighton, Pennsylvania. Officer Kelch verified the CI's information and worked with the CI to set up two controlled purchases of crack cocaine from Nicholson using marked bills.

Officer Kelch's descriptions of the controlled buys were summarized by the suppression court as follows:

> The first controlled buy occurred during the week of November 10, 2019. The [CI] contacted "Wes" and requested to purchase crack cocaine. "Wes" instructed the confidential informant to find a blue Dodge Caliber at the 500 block of 5th Avenue and open the door, exchange money for crack cocaine, and leave. The [CI] performed as directed while Corporeal Kelch and Task Force Officer Conley observed from a distance. Shortly after the confidential informant completed the transaction, the officers saw "Wes" exit a nearby Dollar Store and enter the car. "Wes" then drove directly to 1235 6th Avenue. Task Force Officer Conley followed "Wes" and saw him enter the rear of the residence at 1235 6th Avenue.

\* \* \* \*

- 2 -

The second controlled buy occurred within forty-eight hours before December 11, 2019. The [CI] contacted [Nicholson] and requested to purchase crack cocaine. [Nicholson] arranged for the [CI] to meet at the 600 block of 7th Avenue. Task Force Officers then observed [Nicholson] leave his residence at 1235 6th Avenue. [Nicholson] made two stops before arriving at the designated meeting location. First, he stopped at the post office. Second, Corporeal Kelch testified that [Nicholson] stopped at a second location, but he could not identify where [Nicholson] had stopped. [Nicholson] then arrived at the 600 block of 7th Avenue. The controlled buy was completed just like the first controlled buy using an unlocked vehicle. [Nicholson] then drove directly back to 1235 6th Avenue.

Suppression Court Opinion and Order, 12/15/2020, at 2-3; *see also* Probable Cause Affidavit of Officer Stephen Kelch, 12/11/2019, at Paragraphs 7-9.

Officer Kelch's affidavit concluded with a description of his general knowledge of drug dealer behavior, including that a drug dealer typically stores drugs, weapons and other contraband in his home, among many other places. *See* Probable Cause Affidavit of Officer Stephen Kelch, 12/11/2019, at Paragraphs 11-19.

Based on this information, the Magisterial District Judge granted the search warrant of Nicholson's home. During the resulting search, the police found cocaine, paraphernalia, weapons and cash. The Commonwealth then charged Nicholson with several drug and firearms offenses.

In an omnibus pretrial motion, Nicholson moved to suppress the evidence obtained from his home. He argued that the affidavit supporting the search warrant did not contain sufficient facts to give the police probable cause to believe that evidence of criminal activity would be found in the residence.

Relying heavily on our decision in **Commonwealth v. Way**, 492 A.2d 1151 (Pa. Super. 1985), the suppression court granted the motion, precluding the seized evidence from being admitted at trial. **See** Suppression Court Opinion and Order, 12/15/2020, at 6-7.[1]

The Commonwealth now appeals,[2] contending that the suppression court erred in finding that the police lacked probable cause to justify the search. According to the Commonwealth, the police had sufficient facts to believe that illegal drugs would be found at Nicholson's residence under the totality of the circumstances. The Commonwealth stresses that the police observed Nicholson going home after each of the two controlled buys, and that by nonetheless ruling there was no connection between the drug sales

---

[1] When presented with a suppression motion, the court does not "conduct a *de novo* review of the issuing authority's probable cause determination, but . . . simply . . . determine[s] whether or not there is substantial evidence in the record supporting the decision to issue a warrant." **Commonwealth. v. Gagliardi**, 128 A.3d 790, 794 (Pa. Super. 2015) (quoting **Commonwealth v. Jones**, 988 A.2d 649, 655 (Pa. 2010)). If "a substantial basis exists to support the magistrate's probable cause finding," the suppression court must uphold the judgment of the Magisterial District Judge. **Gagliardi**, 128 A.3d at 795 (quoting **U.S. v. Leon**, 468 U.S. 897, 914 (1984)). Thus, "the reviewing court must accord deference to the issuing authority's probable cause determination, and must view the information offered to establish probable cause in a common-sense, non-technical manner." **Jones**, 988 A.2d at 655.

[2] In reviewing a suppression court's determination, this Court is bound by the factual findings of the suppression court to the extent they are supported by the record. **See Commonwealth v. James**, 69 A.3d 180, 186 (Pa. 2013). We review the suppression court's legal conclusions *de novo*. **Id**.

and the residence, the suppression court failed to evaluate "the facts in a common-sense, non-technical fashion[.]" Appellant's Brief, at pp. 20-21.

## II.

## A.

The issuance of a constitutionally valid search warrant requires that police provide the issuing authority with sufficient information to persuade a reasonable person that there is probable cause to conduct a search based upon information that is viewed in a commonsense manner. ***See Commonwealth v. Housman***, 986 A.2d 822, 843 (Pa. 2009). The issuing authority must determine whether, given the totality of the circumstances presented, there is a fair probability that evidence of a crime or contraband will be found in a particular location. ***Id.***

However, "probable cause to believe that a man has committed a crime on the street does *not* necessarily give rise to probable cause to search his home." ***Commonwealth v. Wallace***, 42 A.3d 1040, 1049–50 (Pa. 2012) (citing ***Commonwealth v. Heyward***, 375 A.2d 191, 192 (Pa. Super. 1977)) (emphasis added); ***see also Commonwealth v. Kline***, 335 A.2d 361, 364 (Pa. Super. 1975). The affidavit of probable cause must establish a "substantial nexus" between the suspect's home and the criminal activity or contraband sought to permit the search of the home. ***Id***. The task of the reviewing court is to ensure that the issuing authority had a substantial basis to conclude that probable cause existed. ***Id***.

These principles were applied in **Way**, a factually analogous case discussed by the suppression court in the present matter. **See** Suppression Court Opinion and Order, 12/15/2020, at 6-7.

In **Way**, an undercover police officer asked two suspects to procure methamphetamine for him. **See Way**, 492 A.2d at 1152. The two suspects met with the defendant, who provided the drugs. After the transaction, a surveillance officer followed the defendant's vehicle to another location, which turned out to be the defendant's home. The affidavit in support of the warrant stated that police followed the defendant to his home after the transaction.

On these facts, the affidavit was held to be insufficient to support a probable cause determination. We explained that

> [p]robable cause to believe that a man has committed a crime does not necessarily give rise to probable cause to search his home . . . [A]n allegation based on an assumption or supposition not supported by the facts is insufficient to support (an inference of) criminal activity in the premises, in spite of the fact that there are plenty of allegations alleged to relate to criminal activity of the individual who is alleged to have lived in the premises.

**Id**. at 1154 (quoting **Commonwealth v. Kline**, 335 A.2d 361, 363 (Pa. Super. 1975)). Rather, the totality of the circumstances demonstrated that the defendant's base of operations for his drug dealing was his vehicle and not his home. **Id**.; **see also Commonwealth v. Gagliardi**, 128 A.3d 790, 798 (Pa. Super. 2015).

In this case, while Nicholson returned to his residence after each drug sale, that does not alone support a probable cause determination justifying a

search of his home. As to the first controlled buy, the police did not observe where Nicholson came from on his way to the location of that transaction. This made it just as likely that he picked up the contraband from somewhere other than his own residence. It was also equally possible that Nicholson kept the drugs in his vehicle, where the sale took place.

Similarly, just prior to the second transaction, police observed Nicholson leaving his home and making two stops – one at the post office and one at another identified location - before he arrived at the location of that second drug buy. This again supports the notion that Nicholson retrieved the drugs from a location other than his home on his way to the sale. It does not logically follow that Nicholson had the drugs stashed at his home just because he went there after each sale was completed. As in **Way**, the police, at most, had probable cause to believe the drugs were kept in Nicholson's *car*, which he used as his main base of operations.

The Commonwealth has argued that a finding of probable cause was supported by the totality of the circumstances because the police observed facts creating a substantial nexus between the drug buys and Nicholson's home. It attempts to analogize the present case to the scenarios in **Commonwealth v. Gray**, 503 A.2d 921 (Pa. Super. 1985), and **Commonwealth v. Clark**, 28 A.3d 1284 (Pa. 2011), where it was held that under the totality of the circumstances, police had probable cause to search a drug dealer's home.

However, both of those cases are distinguishable because in each, a reliable confidential informant had specifically told police that drugs would be found in the defendant's home. *See Gray*, 28 A.3d at 1285 (CI informed police that defendant "packages and distributes cocaine" from his residence); *Clark*, 28 A.3d at 922 (several reliable CIs told police that defendant and his girlfriend "had approximately twenty pounds of marijuana at their residence."). Police were also able to corroborate the tips in both cases because the defendant drove directly from his home to the location of the controlled buy.

Conversely, in the present case, the CI never reported to police that Nicholson was selling drugs from his home. In Officer Kelch's affidavit, he recounted being told by the CI only that Nicholson "is selling crack cocaine in various areas throughout New Brighton." *See* Probable Cause Affidavit of Officer Stephen Kelch, 12/11/2019, at Paragraph 4.

The police later observed that both controlled drug buys took place in Nicholson's car. Unlike in *Gray* and *Clark*, the police did not corroborate a tip as to where a stash was being kept because no such tip was ever given. Additionally, as already noted, the police here did not observe Nicholson proceeding directly from his residence to the locations of the drug buys. The suppression court correctly applied *Way* in ruling that the facts presented to the Magisterial District Judge were insufficient to justify a probable cause

determination, as a substantial nexus between the drug buys and Nicholson's residence was never established.

**B.**

The affidavit of probable cause also contained Officer Kelch's assertion that drugs would be found in Nicholson's home based on his "professional experience" that drug dealers typically store drugs, weapons and other contraband in their homes. While such experience can be a relevant factor for probable cause under the totality of the circumstances, it is only properly considered where the officer can "demonstrate a nexus between his experience and the search, arrest, or seizure of evidence." *Commonwealth v. Thompson*, 985 A.2d 928, 935 (Pa. 2009).

In other words, there must be something in the affidavit that links the place to be searched directly to the criminal activity. Merely referring to "professional experience" does not alone justify the issuance of a search warrant. Otherwise, a police officer's "professional experience" could be used to justify a search of any place where drugs could possibly be kept. With respect to Nicholson's residence, no such nexus was shown here to make the police officer's professional experience probative.

Moreover, Officer Kelch's allegation that drug dealers often keep drugs in their homes is one of many boilerplate comments setting forth his training experience, most of which had no relevance to the probable cause determination in this case. In paragraph 12 of the affidavit, Officer Kelch

states that traffickers may keep their drugs in just about any place they have "dominion" or have access, including numerous locations other than their own residences:

> Your Affiant further knows the following from his training and experience, that it is common for drug traffickers to maintain books, records, receipts, notes, ledgers, receipts and the like relating to the purchase of financial instruments and/or the transfer of funds, and other papers relating to the transportation, ordering, sale, and distribution of Controlled Substances where they have ready access to them, for instance in their residences and businesses, the residences of relatives and associates, safe deposit boxes, strong boxes, computers, and/or other locations over which they (drug traffickers) maintain dominion. It is also common for drug trafficking records, including paper records and records maintained on computers, being illicit business records, to be kept for much longer periods of time than the drugs to which they relate and that such records are often kept in the same places that drugs are kept. And, it is common for drug traffickers to keep photographs or other images of assets, conspirators and drugs within their residences and businesses, within the residences of relatives and associates, in safe deposit boxes, in strong boxes and/or other remote locations over which they (drug traffickers) maintain dominion and control as well as on devices (computers, cameras and video-cameras) which they (drug traffickers) own or to which they have access.

Probable Cause Affidavit of Officer Stephen Kelch, 12/11/2019, at Paragraph 12. Corporal Kelch's professional knowledge as expressed in Paragraph 12 is so expansive as to where drug dealers keep drugs that it is pretty much pure speculation and conjecture and cannot serve, even if not foreclosed for other reasons mentioned, as any basis for which a search warrant can be issued.

Finally, it has been noted drug dealers often store drugs in places other than their homes. In Judge Moulton's concurring opinion in ***Commonwealth v. Torres***, 177 A.3d 263, 278–79 (Pa. Super. 2017), he stressed that

"evidence of drug dealing unconnected to a home does not, without more, give probable cause to believe that additional contraband will be found in the home is based on the common sense notion, reinforced by experience, that drug dealers often take pains to store their drugs away from their homes." **See also** Wayne R. LaFave, Search and Seizure, § 3.7(d), text accompanying footnote 210 (October 2016 update) (noting that drugs are "inherently incriminating" and "readily concealable in other possible hiding places" and, therefore, less likely than stolen property to be found in a suspect's home.).

Accordingly, for the foregoing reasons, the suppression court's finding that there was no probable cause made out to search Nicholson's residence is affirmed.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/27/2021