J-A10008-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RAQUAN ENTY | : | |
| | : | |
| Appellant | : | No. 1192 EDA 2024 |

Appeal from the Judgment of Sentence Entered March 14, 2024
In the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0002702-2022

BEFORE: PANELLA, P.J.E., BECK, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY PANELLA, P.J.E.: **FILED JUNE 10, 2025**

Raquan Enty appeals from the judgment of sentence entered in the Court of Common Pleas of Delaware County after his conviction of one count of possession of firearm prohibited (18 Pa.C.S.A. § 6105). Enty challenges the trial court's denial of his motion to suppress. Enty asserts that the warrant application was defective because it failed to establish a sufficient nexus between the investigated shootings and his residence and relied on information from a confidential informant (CI) whose reliability was not established. After careful review, we affirm.

On February 28, 2022, police sought and obtained a warrant to search 1565 Hermesprota Drive, a home in Sharon Hill they linked to Enty and his

_____

[*] Retired Senior Judge assigned to the Superior Court.

two brothers, Rasheed Enty and Ravon Enty.[1] Police recovered a firearm. Enty was charged with one count of possession of firearm prohibited (18 Pa.C.S.A. § 6105). On April 24, 2023, Enty filed a motion to suppress. Enty asserted that the facts contained in the affidavit did not rise to the level of probable cause for issuance of the warrants. Following a hearing, Enty's motion to suppress was denied.

On December 6, 2023, after a two-day jury trial, the jury convicted Enty. On March 14, 2024, Enty was sentenced to five to ten years' incarceration. He filed a timely post-sentence motion that was denied. Enty timely appealed.

Enty raises the following issue on appeal.

> 1. Did the trial court err in denying [Enty's] Motion to Suppress where the warrant application failed to establish sufficient nexus between the investigated crime and the property searched and where the warrant application relied on information from a Confidential Informant whose reliability was not established?

Enty's Brief, at 4 (footnote omitted).[2]

At issue on appeal is the information supplied in the search warrant application. Thus, we recount those details set forth in the affidavit of probable cause.

Affiant, Pennsylvania State Police Trooper James Leitch, and Homicide detective Janel Craig were investigating two shootings that occurred on

---

[1] Throughout this memorandum, we refer to the appellant, Raquan Enty, by his last name and his two brothers by their first names.

[2] Enty acknowledges that he preserved multiple issues in his 1925(b) statement but is only pursuing relief on this issue. *See* Enty Brief, at 4 n.1.

December 7, 2021, and December 17, 2021, in Philadelphia. At both scenes, 9mm fired cartridge casings were recovered. Based on Trooper Leitch's prior investigations, he knew the victims to be members of the "24th Street" gang who had an ongoing feud with the M-16 "Smallside" gang. Surveillance video of both shootings showed a gray Nissan Murano approaching the victims and the rear passenger firing multiple bullets towards the victims. During the December 17th shooting, one of the victims fired several bullets at the Nissan Murano. From the surveillance footage, the Nissan Murano had a Maryland registration, heavy window tint, ski racks, and a distinct black box shaped sticker to the left of the license plate. The Maryland registration was reported stolen on October 10, 2021.

Detective Craig was informed by a CI with the Bureau of Alcohol, Tobacco, and Firearms that Enty was the shooter and that, at least the December 17th shooting, was in retaliation for the March 2015 murder of Enty's brother and "Smallside" associate, Rashan Enty. The CI had been active since February 2021, and the information previously provided led to the seizure of illegally trafficked firearms and information on multiple shootings and homicides.

Detective Craig performed a criminal justice database query of Enty and found that he was on federal parole with a registered address of 1565 Hermesprota Drive. Detective Craig observed that a 2009 Nissan Murano with Pennsylvania registration (JHF9940) was registered to the address and to Rasheed Blow-Enty. On December 20, 2021, Detective Craig submitted an

- 3 -

automated license plate reader request for Pennsylvania registration JHF9940. The most recent reading from December 14, 2021, showed a photograph of the gray 2009 Nissan Murano with the same distinctive characteristics seen in the surveillance video of the shootings.

On December 22, 2021, Detective Craig contacted Enty's federal parole officer James Telse. Officer Telse informed Detective Craig of the following: he had conducted numerous home visits at 1565 Hermesprota Drive; he had observed the gray Nissan Murano parked in front of the house; and on December 17, 2021, Officer Telse was scheduled to conduct a home visit. At approximately 2:20 p.m. Officer Telse called Enty's cellular phone, and Enty informed Officer Telse that he was currently in South Philadelphia with his brother. The December 17, 2021, shooting occurred at approximately 2:30 p.m. in South Philadelphia. Lastly, Officer Telse provided Enty's cellular phone number to Detective Craig.

During the course of their investigation, officers conducted surveillance of the residence. They observed both Enty and Rasheed enter and exit the residence. On one occasion, Enty was observed exiting a vehicle registered to Zahmira Jordan. Detective Craig conducted a query and found that on April 24, 2020, Zahmira Jordan had purchased a 9mm handgun.

On December 27, 2021, Detective Craig obtained a search warrant for location data pertaining to Enty's phone number. The location data showed that on December 17, 2021, the user was in the area of the homicide around

2:20 p.m., and after the homicide the user traveled to the area of 1565 Hermesprota Drive, where it stopped for an extended period of time.

On January 7, 2022, Pennsylvania State Police located the gray 2009 Nissan Murrano and towed it. A fresh bullet hole was observed in the driver's side rear bumper. A female who identified herself as Lashawnia Gilbert contacted the Pennsylvania State Police regarding the vehicle. The affiant spoke to Gilbert. She stated that the vehicle was registered to her brother Rasheed Enty but that she was the primary driver. When the affiant asked Gilbert who operated the vehicle on December 7, 2021, she responded that she knew who it was but did not want to get them in trouble.

A few days later Rasheed contacted the affiant and advised that Gilbert called him "screaming" about the Nissan. Rasheed refused to provide any information and hung up. The affiant knew Gilbert to be the girlfriend of Ravon, who was a known associate of the "Smallside" gang. Detective Craig conducted a query that showed that Ravon's identification card listed 1565 Hermesprota Drive as his address and he also received government benefits there.

Thereafter, the police processed the gray Nissan Murano and continued to conduct physical surveillance of 1565 Hermesprota Drive. They also conducted fixed video surveillance of 232 Main Street during which they observed Enty, Ravon, and Gilbert interact. Lastly, the affiant stated that based on his training and experience with gang-related shootings it is common

for suspects to retain a firearm after the date of the offense in large part because of their inability to legally purchase a firearm.

Based on this information, the search warrant was signed.

"Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." **Commonwealth v. Fletcher**, 307 A.3d 742, 745 (Pa. Super. 2023), *appeal denied*, 318 A.3d 384 (Pa. 2024) (brackets and citation omitted). When reviewing an issuing authority's probable cause determination to ensure that there was a substantial basis for concluding that probable cause existed, we afford the issuing authority's probable cause determination deference. **See Commonwealth v. Green**, 204 A.3d 469, 480 (Pa. Super. 2019), *affirmed*, 265 A.3d 541 (Pa. 2021). Because of this deference our inquiry is "simply to determine whether or not there is substantial evidence in the record supporting the decision to issue the warrant." **Id.** (citation omitted). This inquiry "is limited to the four corners of the affidavit." **Commonwealth v. Ani**, 293 A.3d 704, 709 (Pa. Super. 2023) (citation omitted).

Further,

When considering the adequacy of a search warrant, we must bear in mind the following:

Before an issuing authority may issue a constitutionally valid search warrant, he or she must be furnished with information sufficient to persuade a

reasonable person that probable cause exists to conduct a search. The standard for evaluating a search warrant is a "totality of the circumstances" test as set forth in ***Illinois v. Gates***, 462 U.S. 213 (1983), and adopted in ***Commonwealth v. Gray***, 503 A.2d 921 ([Pa.] 1985). A magistrate is to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, **there is a fair probability that contraband or evidence of a crime will be found in a particular place**. The information offered to establish probable cause must be viewed in a common sense, nontechnical manner.

***Commonwealth v. Carey***, 249 A.3d 1217, 1223-24 (Pa. Super. 2021) (quotation marks and citation omitted) (emphasis added); ***see also Commonwealth v. Nicholson***, 262 A.3d 1276, 1282 (Pa. Super. 2021) ("In other words, there must be something in the affidavit that links the place to be searched directly to the criminal activity.").

With these legal principles and the information contained in the affidavit of probable cause in mind we address Enty's contention that the affidavit of probable cause failed to establish a sufficient nexus between the suspected criminal activity and the search of Enty's residence.

Enty argues that although the police gathered information that Enty was involved in the shootings and he lived at the residence, they failed to gather any evidence that shows a nexus between the shootings and the residence. ***See*** Appellant's Brief, at 12-14. Enty asserts that "[t]he only nexus between any of the numerous facts provided and the searched house appears to be that the police's suspect lives there and that the car that police already had in

their possession was registered to that address." ***Id.*** at 18 (footnote omitted). In support of his position, Enty relies on two cases he claims are analogous, ***Commonwealth v. Jacoby***, 170 A.3d 1065 (Pa. 2017) and ***Nicholson***, 262 A.3d 1276. ***See*** Appellant's Brief, at 19-22. We are unpersuaded by Enty's argument.

Initially, we disagree with Enty's characterization that the only nexus between the residence and the shootings was that Enty lived there, and the Nissan was registered to the address. The record establishes that Enty and the other suspects, his brothers, frequented the residence. The vehicle used in the shootings was registered to the address and Officer Telse told Detective Craig that he had seen the gray Nissan Murano parked in front of the house on previous home visits. Importantly, the cellular phone location data showed that on December 17, 2021, the user of Enty's phone was in the area of the shooting at the time it occurred and afterwards returned to this residence. Further, the firearm used in both shootings had not yet been located, giving rise to the suspicion that the firearm may be stored at the residence. This supported a finding of probable cause connecting the residence to the shooting.

Additionally, Enty's reliance on ***Jacoby*** and ***Nicholson*** is misplaced as those cases are distinguishable. In ***Jacoby***, fifteen months after a murder, police obtained a search warrant for Jacoby's house to locate the missing firearm used in the murder. ***See Jacoby***, 170 A.3d at 1082. The affidavit of probable cause contained witness statements and other information that

placed Jacoby at the victim's house around the time of the murder, the cartridges found at the scene were the same caliber as Jacoby's registered firearm, and a statement from the detective that it was "reasonable" to believe that Jacoby would hold onto the firearm for such a lengthy period of time because he was a person not to possess and thus it would be difficult for him to obtain another firearm. *See id.* at 1082-83. Our Supreme Court held that the search warrant lacked probable cause connecting Jacoby's house to the murder. *See id.* at 1084-86.[3]

The Court explained that

Probable cause to search Jacoby's home did not exist simply because probable cause existed to believe that he had committed the murder, with a weapon of the same caliber as one that he owned, and then drove in the general direction of his home fifteen months before the search warrant was issued. Together and by themselves, these factors do not justify entry without some nexus to the home. The trial court overlooked the significant gap of time between the murder and the search, and then attempted to buttress its conclusion with an unsourced assessment of general human behavior. Without support, the trial court reasoned that people—felons especially—generally do not discard firearms, even those used in murders.

*Id.* at 1084.

In **Nicholson**, the police obtained a search warrant for Nicholson's house based on the affiant's observation of two controlled buys that took place

_____

[3] The Court found that the absence of probable cause in the search warrant was harmless error. *See Jacoby*, 170 A.3d at 1086-87. Three justices dissented from the majority's holding that there was not probable cause to believe that the murder weapon would be found at Jacoby's house. *See id.* at 1096-98 (Mundy, J., concurring); *see id.* at 1099 (Saylor, C.J., dissenting).

in Nicholson's van and the officer's generalized assertion that drug dealers typically store drugs in their homes. **See Nicholson**, 262 A.3d at 1278-79. The suppression court granted Nicholson's suppression motion, and this Court affirmed. **See id.** at 1278. This Court explained that at most the police had probable cause to believe that Nicholson kept drugs in his van, but there was no nexus between the drug deals and his home. **See id.** at 1280-81. Without any connection to Nicholson's residence, the affiant's professional experience regarding where drug dealers store their drugs did not justify the issuance of the search warrant. **See id.** at 1282-83.

Here, there is more information connecting Enty's residence to the suspected criminal conduct to support a finding of probable case than there was in **Jacoby** and **Nicholson**. Enty returned to the residence immediately after the shooting. The vehicle used in the shootings was registered to his address and in his brother's name, who was also a suspect in the shooting. That same vehicle was observed by Enty's parole officer parked outside the residence. Police seized the vehicle and were still unable to locate the firearm. Additionally, the notion that the suspects would retain the firearm after the shootings was not merely the affiant's belief but based on the affiant's experience investigating gang-related shootings and was not the sole basis for connecting the residence to the shooting. Further, the same firearm was used in both shootings which occurred on different dates. This supported the notion that the suspects would retain the firearm even after committing a crime. Therefore, **Jacoby** and **Nicholson** are distinguishable and do not

entitle Enty to relief. Thus, Enty's argument that the affidavit did not establish probable cause connecting his residence with the shootings does not warrant relief.

Enty also argues that the affidavit did not establish probable cause that he engaged in criminal activity because it lacked information to establish the CI's reliability. **See** Appellant's Brief, at 22. He claims that his connection to the shootings is based almost entirely on the information from the CI. **See id.** at 23. We disagree.

As a legal matter Enty misunderstands the role of a CI's reliability in determining probable cause for a search warrant. There is no prerequisite that an affidavit of probable cause establishes the basis of an informant's knowledge and the informant's veracity or reliability to consider the information. **See Commonwealth v. Clark**, 28 A.3d 1284, 1286-87 (Pa. 2011) (explaining the United States Supreme Court abandoning the "two-part" test and adopting the "totality of the circumstances" test and Pennsylvania's adoption). A CI's "basis of knowledge" and "veracity" is just one factor for an issuing authority to consider. **Carey**, 249 A.3d at 1223-24. The basis of knowledge and veracity of anonymous sources is only "vital" to the determination of probable cause "where the affidavit of probable cause is almost entirely based on information gleaned from anonymous sources." **Commonwealth v. Torres**, 764 A.2d 532, 540 (Pa. 2001). This is not the situation here. Because the affidavit in question satisfies the "totality of the

circumstances" test and was not based solely on the information provided by the CI, Enty's challenge on this basis also provides no ground for relief.

As previously explained, Enty's connection to the shootings was based on much more than the information from the CI. In reviewing the search warrant application, the issuing authority viewed the information in the affidavit in its totality and correctly concluded that there was probable cause that evidence connected to the shooting would be found at the residence. Based on the foregoing, the trial court did not err in denying Enty's motion to suppress. Therefore, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/10/2025

- 12 -