J-S16024-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| DEANDRE LAQUAN BENTLEY | : | No. 1253 MDA 2024 |

Appeal from the Order Entered August 12, 2024
In the Court of Common Pleas of Lycoming County Criminal Division at
No(s): CP-41-CR-0001353-2023

BEFORE: LAZARUS, P.J., BOWES, J., and LANE, J.

MEMORANDUM BY BOWES, J.:                    **FILED JULY 10, 2025**

The Commonwealth of Pennsylvania appeals from the order granting the motion to suppress evidence filed by Deandre Laquan Bentley ("Appellee"). We reverse and remand for further proceedings.

We glean the following background from the certified record. The Commonwealth alleged that on January 18, 2023, members of the Lycoming County Narcotics Enforcement Unit ("NEU") and local police conducted a controlled buy with the use of a confidential informant ("CI") in Williamsport, Pennsylvania. Specifically, it asserted that the CI contacted Appellee via cell phone and, approximately twenty minutes later, purchased crack cocaine from him with pre-marked funds provided by the police and within their presence. Immediately after the exchange, Appellee indicated to the CI that he did not have all the drugs on him, so "he was going to get two more bags of crack cocaine and bring them right back" and drove away. *See* Application for

Search Warrant and Authorization, 1/18/23, at unnumbered 4. NEU members and the Southern Williamsport Police followed Appellee and conducted a traffic stop near a McDonald's restaurant. They arrested him after determining that he had an outstanding warrant, and further found on his person the funds utilized as part of the controlled buy, as well as an access card for a storage unit located near the place of the traffic stop.

The CI informed police at that time that Appellee may have been heading to a storage unit nearby to procure the remainder of the crack cocaine. Utilizing information from the access card to determine which unit belonged to Appellee, officers applied for and obtained a search warrant seeking evidence of controlled substances or paraphernalia. Upon gaining access to the storage facility, they found forty-one MDMA pills, one and one-half ounces of suspected crack cocaine, and 1.84 grams of suspected fentanyl. Also, after observing a handgun with an obliterated serial number, they obtained a second warrant.

The Commonwealth thereafter charged Appellee with three counts of possession with intent to deliver ("PWID") a controlled substance, as well as one count each of delivery of a controlled substance, possession of firearm prohibited, and criminal use of a communication facility. Appellee filed a motion to suppress the evidence seized from the storage unit, alleging that the initial search warrant was unsupported by probable cause. The trial court held a brief hearing wherein it entertained argument of the parties but did not take testimony, as the challenge was limited to the four corners of the

warrant. On August 12, 2024, the court issued an opinion and order granting suppression.

The Commonwealth timely appealed and certified that the trial court's ruling substantially handicapped the prosecution. *See* Pa.R.A.P. 311(d) ("[T]he Commonwealth may take an appeal as of right from an order that does not end the entire case where the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution."). Both the Commonwealth and the trial court complied with their respective duties pursuant to Pa.R.A.P. 1925. The Commonwealth presents the following inter-related issues for our review:

> I. Whether the trial court abused its discretion by suppressing evidence seized as a result of a search warrant that was executed upon a storage unit wherein that search warrant contained probable cause to search.
>
> II. Whether the trial court abused its discretion when it failed to limit its review of the search warrant to its four-corners and, instead, included independent assumptions and conclusions in coming to its decision.
>
> III. Whether the trial court abused its discretion by determining that the information provided by the [CI] was unreliable, despite being independently corroborated by law enforcement, and thus could not contribute to the finding of probable cause to search the storage unit.

Commonwealth's brief at 9.[1]

We begin by setting forth the relevant tenets of law:

---

[1] Appellee did not file a brief in this matter.

> When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The [trial] court's findings of fact bind an appellate court if the record supports those findings. The . . . court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the [trial] court properly applied the law to the facts.

**Commonwealth v. Korn**, 139 A.3d 249, 252-53 (Pa.Super. 2016) (citation omitted). In this case, evidence introduced at the hearing consisted solely of the two search warrant applications for the storage unit.

Further, "a reviewing court may not conduct a *de novo* review of the issuing authority's probable cause determination but, instead, is tasked simply with the duty of ensuring the issuing authority had a substantial basis for concluding that probable cause existed." **Commonwealth v. Shackelford**, 293 A.3d 692, 698 (Pa.Super. 2023) (cleaned up). Concerning the issuance of warrants, Pa.R.Crim.P. 203 provides in pertinent part as follows:

> (B) No search warrant shall issue but upon probable cause supported by one or more affidavits sworn to before the issuing authority in person or using advanced communication technology. The issuing authority, in determining whether probable cause has been established, may not consider any evidence outside the affidavits.
>
>     . . . .
>
> (D) At any hearing on a motion for the return or suppression of evidence, or for suppression of the fruits of evidence, obtained pursuant to a search warrant, no evidence shall be admissible to establish probable cause other than the affidavits provided for in paragraph (B).

Pa.R.Crim.P. 203.

- 4 -

This Court has additionally stated:

Before an issuing authority may issue a constitutionally valid search warrant, he or she must be furnished with information sufficient to persuade a reasonable person that probable cause exists to conduct a search. . . . A magistrate is to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, **there is a fair probability that contraband or evidence of a crime will be found in a particular place**. The information offered to establish probable cause must be viewed in a common sense, nontechnical manner. Probable cause is based on a finding of the probability, not a *prima facie* showing of criminal activity, and deference is to be accorded a magistrate's finding of probable cause.

*Commonwealth v. Manuel*, 194 A.3d 1076, 1081 (Pa.Super. 2018) (*en banc*) (cleaned up, emphasis added).

Here, the trial court concluded that the initial warrant for the storage unit, issued by the magisterial district judge, was not supported by probable cause. Thus, we begin by reviewing the affidavit as it was presented to the issuing authority:

I, Detective Anderson, being duly sworn, depose and state that: I am a detective for the [NEU] and have been employed as a detective in this unit since February of 2020. As a detective with the NEU, I have been involved with hundreds of investigations involving the sale and delivery of narcotics, including 130 successful operations operating in an undercover capacity.

I have been a police officer since 2011, serving in multiple agencies in Columbia County and the state of Florida, before being employed by the [NEU]. During my tenure in those capacities, I have investigated violations of numerous Crimes Code Statutes and acted as the affiant in numerous Criminal Complaints to include cases involving violations of the Controlled Substance, Drug, Device and Cosmetic Act.

I am a graduate of Harrisburg Area Community College (Act 120 certification) in June 2011. I began my employment as a Police Officer in 2011 and have conducted hundreds of investigations. I am also class A certified in wiretapping and electronic surveillance and have received specialized training from the Federal Government for conducting undercover operations. I have also received training in identifying criminal vehicles and occupants, proactive patrol tactics and "Buyin[g] Dope Tactics for Undercover Operations".

Upon information and belief that there are presently concealed within the premises to be searched, listed in this search warrant, those items which are set forth in the "Items to Be Searched for and Seized" section[,] I am respectfully requesting this search warrant for said location, which constitute evidence in violation of the Controlled Substance, Drug, Device and Cosmetic Act, Title 35, specifically sections 780-113(a30), or are contraband unlawfully possessed or otherwise subject to seizure.

On Wednesday January 18, 2023, CI 23-03 contacted Detective Dent and advised that they could purchase crack cocaine from a black male they knew as "R". This CI described "R" as being heavy set and driving a silver Minivan and that "R" was from the Lewisburg[, Union County] area. At the direction of Detective Dent, the CI contacted "R" and arranged a crack cocaine deal for $100.00. This CI has been deemed reliable and NEU Detectives have independently corroborated information this CI has provided. All times are approximate.

At approximately 1852 hours, Detective Dent and I met the CI at a predetermined location. The CI was searched to negate the presence of any drugs, contraband or currency (none found). I then provided the CI with the prerecorded police currency. The CI then contacted "R" in my presence and I heard the CI speaking with a black male, who agreed to come and deliver us crack cocaine for $100.00. The CI advised "R" to contact us once he had arrived.

At approximately 1910 hours, a silver van arrived in the area of the 300 block of Park Court, in the city of Williamsport. The CI advised that that was "R" and the CI approached the driver's side window of the vehicle. I observed the CI conduct a hand-to-hand transaction through the window of the vehicle. The vehicle then left and traveled east on Park Court, toward Hepburn

Street. The CI immediately returned to me and turned over [four] small pink zip lock bags. Each bag contained a white chunky substance that, based on my training and experience, was consistent with crack cocaine. The CI also told me that "R" was going to get two more bags of crack cocaine and immediately bring them to us because he owed two more. The CI was then searched again to negate the presence of any drugs, contraband or currency (none found).

NEU Detectives tailed the silver minivan that "R" was operating to the area of McDonald[']s on Route 15 in South Williamsport, where South Williamsport Police conducted a traffic stop. The driver and sole occupant was identified as [Appellee]. [Appellee] was found to have an active arrest warrant and was taken into custody. During a search incident to arrest, [Appellee] was found in possession of the prerecorded buy money. The CI then relayed to me that [Appellee] was most likely going to a storage unit he has in South Williamsport, by the McDonald[']s, to get the rest of the crack cocaine he owed us. The CI advised that they had personally helped [Appellee] move belongings into the storage unit the previous day. [Appellee] was also in possession of a card with a gate access code for My Self Storage, which is located at 50 W. Eighth Avenue, South Williamsport and two grey keys. A local law enforcement officer who is known to me and that I have worked with since I've been employed with the NEU and who is also involved in this investigation, has had multiple storage units at My Self Storage and advised that the grey keys are provided by the business and are used to access the lock on the particular storage unit. The law enforcement officer also advised that the gate access code that is provided to a person renting a storage unit consists of the storage unit number and the last four numbers of the customer's phone number. The card that [Appellee] was in possession of had a gate code of "2030656". The phone number that the CI contacted to arranged [*sic*] this drug transaction with [Appellee ended in the last four digits of] 0656. Based on the information provided by the law enforcement officer, [Appellee]'s storage unit would be number 203. The CI also advised that the storage unit was a larger unit and that it was attached to the 200 building and was the third, fourth, fifth or sixth unit. Unit number 203 is the third storage unit on the 200 building and is a larger unit.

I would submit that based upon the following facts;

-The controlled crack cocaine buy conducted by the CI from [Appellee]

- [Appellee]'s statements to the CI that he was going to get two more bags of crack cocaine and bring them right back to us

-The traffic stop conducted on [Appellee] in the area of My Self Storage

- [Appellee] being in possession of the prerecorded buy money, a gate access code card and lock keys from My Self Storage, identifying his storage unit as 203

-The CI's statements that they had helped [Appellee] place belongings into the storage unit the previous day and their knowledge that his unit was a larger one on the 200 building and that the unit was between the third and sixth units (Unit 203 later identified as the third unit on building 200)

Probable cause exists that currently within unit number 203 of My Self Storage, 50 W. Eighth Avenue South Williamsport is crack cocaine, related paraphernalia and proceeds of illegal drug sales, to include U.S. currency.

Based upon the above-mentioned factors, I respectfully request a daytime search warrant be issued for Unit 203 at My Self Storage, 55 [*sic*] W. Eighth Avenue South Williamsport to seize crack cocaine, related paraphernalia, and proceeds of illegal drug sales, to include U.S. currency.

Application for Search Warrant and Authorization, 1/18/23, at unnumbered 3-4 (some capitalization altered).

With this background in mind, we return to and address together the Commonwealth's claims on appeal. It first argues that the court erred in granting suppression because the court essentially conducted a *de novo* hearing without deferring to the issuing authority's determinations as to probable cause. *See* Commonwealth's brief at 20. The Commonwealth avers that the trial court improperly required certainty of finding evidence in the

storage unit, rather than looking at probabilities. For example, it recounts that the court highlighted certain additional facts the CI could have provided to officers prior to Appellee's arrest, such as whether the CI saw drugs in the unit while assisting Appellee the day before the controlled buy. *Id*. at 21. The Commonwealth further maintains that the court wrongly considered factors such as whether police should have waited to conduct the traffic stop in the hopes of confirming Appellee's ultimate destination. *Id*. at 21-22. It also takes issue with the court's characterizing of the CI's suppositions as "guessing." *Id*. at 24-25.

Furthermore, the Commonwealth accuses the trial court of considering matters outside of the affidavit of probable cause, such as the location of certain places in relation to each other, despite there being no such evidence entered into the record. *Id*. at 28-29. It additionally contends that Appellee never challenged the trustworthiness of the CI in his suppression motion, but even if he did, there was substantial independent corroboration by law enforcement supporting the CI's information to police. *Id*. at 29-31. The Commonwealth summarizes the circumstances warranting probable cause thusly:

> [A] reasonable person with common sense would believe there is more than a fair probability that [Appellee] was headed to the South Williamsport storage units based on the following facts: (1) [Appellee] only took eighteen . . . minutes to get to the [CI] from the time that she called him to arrange the drug sale; (2) [Appellee] did in fact deliver crack cocaine to the [CI]; (3) [Appellee] told the [CI] he needed to retrieve more crack cocaine and would be back immediately; (4) [Appellee] is followed and

then traffic stopped in the "area" of the storage units; (5) the [CI] tells the [NEU] that she knows that [Appellee] has a storage unit in that exact area because she was there the day before; (6) the fact that [Appellee] was at the storage unit the day prior would support the inference that [Appellee] was in Lycoming County, not Lewisburg,[ Union County,] prior to the drug transaction; and (7) [Appellee] was found with a gate access code and keys that directly matched with the information that other law enforcement and the [CI] had provided to the [NEU] with respect to [Appellee]'s storage unit.

*Id*. at 26.

In its Rule 1925(a) opinion, the trial court began its analysis of the Commonwealth's claims by articulating the appropriate standard of review, including the notion that the Commonwealth need only show probability, as opposed to a *prima facie* showing of crime, in order to support probable cause. *See* Trial Court Opinion, 12/9/24, at 3-4. It found that "[w]hen viewed in a common-sense, nontechnical manner through the eyes of a trained narcotics officer, the affidavit did not set forth any facts to establish that Appellee was heading to the self-storage facility to retrieve the remaining two bags of drugs owed to the CI." *Id*. at 4. The court highlighted that the CI did not inform officers beforehand that Appellee was going to the unit, the CI did not see any drugs there while present the day before, and that officers "would have been better served to have waited to stop Appellee until they had some indication that he was going into the self-storage area." *Id*. at 4-5. It furthermore determined that "[t]here was not a fair probability that additional controlled substances would be found at the self-storage facility based upon the information provided in the affidavit." *Id*. at 5. The court cited

***Commonwealth v. Nicholson***, 262 A.3d 1276 (Pa.Super. 2021), as a comparable case and for the proposition that "there must be something in the affidavit that links the place to be searched directly to the criminal activity." ***See*** Trial Court Opinion, 12/9/24, at 5-6.

In addressing the accusation from the Commonwealth that it considered matters outside of the affidavit, the court stated:

> It is possible that [the Commonwealth] is referring to the fact that the court made note of the area where the self-storage unit was located to demonstrate that there was no indication that the Appellee was going there to complete the drug sale. From the affidavit, [the Commonwealth] described that the South Williamsport police pulled . . . Appellee over by McDonald's[,] which is a location south or away from the facility, more in line with Appellee travelling back to his residence in Lewisburg, and not to turn into the facility.
>
> The best evidence of Appellee intending to go into the facility would have been to note in the affidavit that he activated his turn signal to turn into or to have actually turned into the facility. The point the court was making in its opinion was that there was no evidence of the Appellee intending to head into the facility which would have showed a substantial nexus between the drug activity and the self-storage unit. Th[e] court was merely taking a commonsense approach to the review of the facts presented rather than independent assumptions or conclusions.

***Id***. at 8 (some capitalization altered). Finally, the court "found that the CI's information that Appellee offered to the [NEU] was not reliable in that the CI could not offer evidence that connected the self-storage facility with the drug activity." ***Id***. at 9.

Upon careful review, we agree with the Commonwealth that the trial court erred in suppressing the proceeds from the search warrant issued in this

matter. At the outset, we acknowledge that the court articulated the proper standard of review within its Rule 1925(a) opinion. However, we are constrained to conclude that it did not apply that law correctly to the facts established herein.

As noted, "[p]robable cause is based on a finding of the probability, not a *prima facie* showing of criminal activity, and deference is to be accorded a magistrate's finding of probable cause." ***Manuel***, 194 A.3d at 1081. Here, the court gave little if any deference to the magistrate's finding of probable cause and it held the Commonwealth to a burden higher than that required by the law. For instance, its discussion of the "best evidence" the detectives could have identified in the affidavit of probable cause is not a factor in considering the adequacy of the warrant. The same applies to its consideration of additional information the CI **could** have set forth to make law enforcement's articulation of suspicion stronger, such as whether the CI saw drugs in the unit or indicated to police that Appellee was specifically going to the unit to obtain more.

Rather, in applying the proper standard, the trial court should have found that the issuing authority "had a substantial basis for concluding that probable cause existed" for a search of the unit. ***See Shackelford***, 293 A.3d at 698. As the Commonwealth noted, there was substantial evidence that Appellee had engaged in a drug transaction and that he was going to obtain more crack cocaine for the CI from a nearby location. Officers personally observed Appellee participate in a hand-to-hand exchange, the CI returned

- 12 -

with bags of suspected crack cocaine, and Appellee was found a short time later with the pre-marked police funds on him during the traffic stop.

There was also a sufficient "link" between the storage unit and the suspected drugs. *See Nicholson*, 262 A.3d at 1282. Appellee responded to the CI's location for the drug sale within twenty minutes of initial contact, despite his home address being in another county. More critically, Appellee specifically indicated to the CI that "he was going to get two more bags of crack cocaine and bring them right back," suggesting that he was not travelling to his house in Union County, but rather somewhere closer. *See* Application for Search Warrant and Authorization, 1/18/23, at unnumbered 4. These facts, coupled with Appellee driving near the storage unit for which he was found to have an access key, all supported a probability that officers would find drugs or other related contraband in the unit.[2] The trial court thus exceeded the scope of its review by neglecting to defer to the issuing authority's findings and requiring a standard higher than mere probability from the Commonwealth.

Accordingly, we reverse the order granting suppression and remand for further proceedings.

Order reversed. Case remanded. Jurisdiction relinquished.

---

[2] Moreover, these facts are enough to distinguish this case from *Nicholson*. There, the defendant did not give any indication that he would promptly return to the scene of a drug transaction and there was no evidence that he had a particular place to store his drugs outside of his home.

- 13 -

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 07/10/2025