J-S33038-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| AARON CURRY | : | No. 2095 EDA 2024 |

Appeal from the Order Entered July 24, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0007330-2023

BEFORE:  BOWES, J., NICHOLS, J., and BECK, J.

DISSENTING MEMORANDUM BY BECK, J.:　　　**FILED JANUARY 21, 2026**

　　　I respectfully disagree with the Majority that the warrant issued for the search of the residence of Aaron Curry ("Curry") was supported by the requisite probable cause.  As the learned Majority observes, Special Agent Kyle Boyd of the Pennsylvania Office of the Attorney General was the affiant in this matter.  After seeing Curry brandishing a firearm in a livestreamed video Curry posted on social media, Agent Boyd sought (and received) authorization to search the East Clementine Street address where, based on his police work, he believed Curry resided.[1]  He was aware that Curry's

_____

[1] Curry was on probation at all times relevant to this matter, but the address Curry registered with the Philadelphia County Probation Department, which Agent Boyd surveilled on two consecutive days "at various times … were negative for … Curry."  Affidavit of Probable Cause, 7/18/2023, at 4.  Agent
*(Footnote Continued Next Page)*

possession of a firearm was unlawful. In the affidavit of probable cause, Agent

Boyd included the following relevant statements:

> Your affiant knows that firearms are durable goods that are generally kept over the long term and are routinely stored in one's own residence and vehicles. Your affiant knows the fact that [Curry]'s criminal history prohibits him from legally purchasing firearms strengthens your affiant[']s belief that [Curry] would retain possession of any and all firearms illegally obtained. Additionally, your affiant knows through his experience, that individuals who are engaged in the sale of illegal narcotics often possess firearms to protect themselves.[2] Furthermore[,] your affiant knows that from his training and experience that probationers often give address[es] that they are not affiliated with as clean locations for county probation to check while continuing their criminal activity.

Affidavit of Probable Cause, 7/18/2023, at 4-5 (unpaginated; cleaned up,

footnote added).

The magisterial district judge issued the warrant authorizing police to

seize several items, including firearms and related items (e.g., ammunition),

_____

Boyd subsequently learned that Curry received welfare benefits at the East Clementine Street address, and he observed Curry entering and exiting the residence there on several occasions. *Id.* at 4-5.

2 Agent Boyd further attested that on July 13, 2023, "Curry was observed leaving the corner of G and Hilton with various other individuals and going out of view of surveillance on numerous occasions with individuals who approach the corner in a manner which your affiant knows to be indicative of narcotics activity." *Id.* at 4. Similarly, on July 14, 2023, Agent Boyd observed Curry and various other individuals act "in a manner which your affiant knows to be indicative of narcotics activity." *Id.* at 5.

clothing, and a phone.[3]   Authorities executed a search that same day and recovered drugs in plain view, a cell phone, and several firearms.   The Commonwealth thereafter charged Curry with a litany of offenses.

The primary dispute is whether the affidavit gave rise to a finding of probable cause that guns would be located in the residence.[4]   The trial court

_____

[3]  Specifically, the warrant identified the "items to be searched for and seized" as "firearms, firearms paperwork, ammunition, proof of residence, telephone utilized to record the crime and clothing worn during the commission of the firearms offense[,] any and all proof of residence as well as [s]afes/lockboxes that can contain any of the above listed item[s]." Search Warrant GTF-23-0206-01.

[4] Probable cause is "measured by examining the totality of the circumstances." ***Commonwealth v. Jacoby***, 170 A.3d 1065, 1081 (Pa. 2017) (citing ***Illinois v. Gates***, 462 U.S. 213, 238 (1983)).  "Probable cause exists where the facts and circumstances within the affiant's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that a search should be conducted." ***Commonwealth v. Leed***, 186 A.3d 405, 413 (Pa. 2018) (citation omitted). The magistrate is tasked with making

> a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him … there is a fair probability that contraband or evidence of a crime will be found in a particular place.  And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclud[ing] that probable cause existed."

***Commonwealth v. Gray***, 503 A.2d 921, 925 (Pa. 1985) (quoting ***Gates***, 462 U.S. at 238-39) (second ellipsis and bracketing in original).  The "issuing authority may not consider evidence outside the affidavit in making the probable cause determination, and the suppression court, in reviewing this determination, may only consider the affidavit." ***Commonwealth v. James***, 69 A.3d 180, 187 (Pa. 2013).  The "affidavit of probable cause must establish a 'substantial nexus' between the suspect's home and the criminal activity or contraband sought to permit the search of the home." ***Commonwealth v. Nicholson***, 262 A.3d 1276, 1280 (Pa. Super. 2021) (citation omitted).

concluded that the Commonwealth established probable cause to believe that Curry possessed a firearm and that the property served as his residence. *See* Trial Court Opinion, 1/23/2025, at 6. It granted Curry's motion with respect to the firearms, however, on the basis that the issuing authority erroneously applied a categorical assumption that a firearm is likely to be kept in a residence. The affidavit "did not articulate any facts connecting the alleged criminal activity (possession of a gun by a prohibited person) with the address searched," *id.*, beyond the statement that "firearms are durable goods that are generally kept over the long term and are routinely stored in one's own residence and vehicles." *Id.* (quoting affidavit). The court opined that our Supreme Court deemed substantially similar language insufficient in *Jacoby*. Trial Court Opinion, 1/23/2025, at 5 ("The Commonwealth's attempt to distinguish *Jacoby* … is misguided.").

As the quoted language from the affidavit reflects, Agent Boyd provided four bases for the issuing authority to find he had probable cause to believe that guns would be found in Curry's residence: (1) people typically keep guns for long periods of time and generally store them in either their homes or vehicles; (2) as a prior felon prohibited from purchasing/possessing a firearm, it is likely that Curry would retain an illegally obtained gun; (3) people who sell drugs typically possess guns to protect themselves; and (4) probationers often give fake addresses for probation officers to check so that they can continue engaging in criminal activity undetected.

In ***Jacoby***, our High Court rejected the view that an affidavit stating "people generally hold on to their guns" is sufficient to justify an issuing authority's conclusion that there is probable cause to believe a gun would be found in a suspect's home. ***Jacoby***, 170 A.3d at 1085. The Court explained that this conclusion, based "on what some unknown people may or may not do under undefined circumstances … falls short of probable cause," as the probable cause analysis "must be predicated upon individualized suspicion[.]" ***Id.*** at 1084. Further, addressing the contention that as a prior felon, Jacoby was more likely to hold onto his illegally possessed firearm, our Supreme Court stated:

> There is nothing even to suggest that similar people within the same general category would respond to a set of circumstances in the same way. Probable cause to search Jacoby's home must be evaluated based on the circumstances of his case, his behavior, and any nexus to the location to be searched. Our Constitutions prohibit such categorical conclusions, as well as those searches that are based on such assumptions.

***Id.*** at 1085.

Although the ***Jacoby*** Court found there were sufficient allegations to support a finding of probable cause that Jacoby committed the murder with a gun of the same caliber as one he owned,[5] there was no nexus to connect the

_____

[5] In ***Jacoby***, authorities found the body of Monica Schmeyer, who had been killed by a .32 caliber bullet. ***Jacoby***, 170 A.3d at 1071-72. Witnesses observed both Jacoby and his work vehicle at or near the victim's home on the night of the murder, DNA consistent with him was found under the victim's fingernails, and Jacoby had registered to him a .32 caliber gun that was consistent with the firearm used to commit the murder. ***Id.*** at 1072-73.

firearm to Jacoby's house such that a warrant to search the house for the firearm could be properly granted. *Id.* at 1083. The Court found that the Commonwealth failed to provide probable cause to "manifest[] suspicion individualized to the time and place of the search." *Id.* at 1084.

I find it significant that the search warrant at issue in the case at bar contains the same generalizations that the *Jacoby* Court rejected. Nonetheless, the learned Majority distinguishes *Jacoby*, stating that the affidavit was not based on generalized statements about human behavior alone, as Agent Boyd stated that (1) probationers typically provide fake addresses to probation officers to permit them to continue engaging in criminal activity; (2) drug dealers generally have guns for self-protection; and (3) "firearms are usually stored in one's home." Majority Mem. at 10-11. Additionally, the Majority finds significant that the search of Jacoby's home took place fifteen months after the murder, whereas here only eight days elapsed between Agent Boyd seeing Curry holding a firearm and the execution of the warrant. *Id.* at 11.

Beginning with the additional statements Agent Boyd included in his affidavit, the distinctions relied upon by the Majority are simply more general statements, none of which (whether considered individually or together) give rise to individualized suspicion that the gun Curry was observed holding in the video he made would be found in his home.

Agent Boyd's knowledge "from his training and experience" that probationers often provide false addresses to probation officers "while continuing their criminal activity" at other locations does not give rise to probable cause to search the East Clementine residence. *See* Affidavit of Probable Cause, 7/18/23, at 5. While his statement may very well be true, it does not give any indication that a firearm will be found in Curry's residence. *See Commonwealth v. Randolph*, 151 A.3d 170, 184 (Pa. Super. 2016) (explaining that an affiant's claim of "knowledge and experience" does not give rise to probable cause without "explanation of their specific application to the circumstances at hand") (citation omitted).

Moreover, as the *Jacoby* decision made clear and the Supreme Court has long held, "probable cause to believe that a man has committed a crime on the street does not necessarily give rise to probable cause to search his home." *Commonwealth v. Wallace*, 42 A.3d 1040, 1049-50 (Pa. 2012). The alleged drug dealing and the video in which Curry was observed brandishing a firearm all occurred "on the street." There was nothing in the affidavit of probable cause to tie either activity or, in particular, his possession of a firearm, to his home, other than general statements regarding people "within the same general category" as Curry. *See Jacoby*, 170 A.3d at 1085.

For this reason, I find the Majority's reliance on *Commonwealth v. Ani* to be unhelpful. *See* Majority Mem. at 7-8 (citing *Commonwealth v. Ani*, 293 A.3d 704, 727 (Pa. Super. 2023)). The Majority accurately recounts the

*Ani* Court's statement that "*Jacoby* does not appear to completely foreclose some consideration of the possibility that a particular offender will behave in certain ways with respect to assessing whether a sufficient nexus has been established," and its recognition that *Jacoby* forecloses reliance on "categorical assumptions" as "the sole justification for probable cause." *Ani*, 293 A.3d at 727. Again, in my view, the Commonwealth here did solely rely upon categorical assumptions to support its claim of probable cause to search Curry's home, rendering this case on all fours with *Jacoby*.

Further, *Ani* supports, rather than refutes, the trial court's decision here. The relevant question in that case was whether the Commonwealth established that it had probable cause to believe evidence of criminal activity would be found on Ani's cell phone. *See id.* at 723. The *Ani* Court concluded, in pertinent part, that the Commonwealth relied on an assumption that a phone would likely contain evidence of a crime, which the Court found was "the type of generic conclusion in place of individual circumstances that *Jacoby* forbids." *Id.* at 727. Although Ani was seen using his cell phone during the commission of the crimes in question, the Court rejected the Commonwealth's claim that this necessarily meant there may have been location data or recordings thereon that were helpful to the prosecution. *Id.*

Similarly, in the case at bar, we know only that Curry likely lived at the East Clemintine address and was seen entering and exiting it several times while police conducted surveillance. He was not, for example, observed with

a firearm in his hand or on his person when coming or going from the house; no one observed him entering the house immediately after brandishing the firearm; nor was there any suggestion that he conducted narcotics transactions from the residence. Instead, as in **Ani** and **Jacoby**, the Commonwealth "hypothesizes" that the firearm may be found in the house based upon general statements of what groups of people similarly situated to Curry have been found to have done in other circumstances. **Cf. id.** at728. This is insufficient to support a finding of probable cause.

As to the question of the timing of the warrant, I respectfully disagree that the passage of time was the central concern of the **Jacoby** Majority. Although the lengthy gap between the murder and the execution of the warrant was certainly a consideration, the **Jacoby** decision made plain that the Commonwealth must include a connection between the place to be searched and the item(s) to be seized to establish probable cause. **See Jacoby**, 170 A.3d at 1084 ("the probable cause offered in support of that warrant … must have manifested suspicion individualized to the time **and place** of the search") (emphasis added); **id.** (probable cause to believe Jacoby committed the murder, owned a gun of the same caliber as the murder weapon, and drove in the general direction of his home "do[es] not justify entry without **some nexus** to the home") (emphasis added); **id.** at 1085 ("The trial court would hold that, if police officers develop probable cause that a person committed an offense anywhere in the Commonwealth with a weapon

of the same caliber as the one that he or she owns, probable cause exists automatically to search that person's home, no matter where it is located."); *see also id.* ("**Additionally**, the trial court's method for evaluating probable cause does not require consideration, in any way, of the time lapse between the commission of the offense and the search," and criticizing the trial court's apparent conclusion that "probable cause to search for guns exists in apparent perpetuity.") (emphasis added).

Eight days is unquestionably a much shorter period of time than fifteen months. In my view, however, it does not overcome the *Jacoby* Court's central holding and admonition against the use of virtually identical generalizations that the Commonwealth here relied upon to establish probable cause to search Curry's residence for firearms.

I would likewise find that the trial court did not err in finding the search for the clothing worn—a black t-shirt—while possessing a firearm lacked probable cause. The learned Majority concludes that the shirt had evidentiary value, as Curry wore it during the commission of the crime (illegal possession of a firearm), and because it was simply a plain black shirt, the description of it provided in the affidavit of probable cause "was as specific as 'reasonably possible.'" Majority Mem. at 11-12 (quoting *Jacoby*, 170 A.3d at 1082).

The record reflects that the warrant authorized a search for "clothing worn during the commission of the firearms offense," which the affidavit of probable cause describes as "a black in color t[-]shirt[.]" Warrant GTF-23-

- 10 -

0206-01; Affidavit of Probable Cause, 7/18/23, at 3. The trial court found that the warrant was not particularized because "[i]t would be difficult to search a house in Pennsylvania and not locate a black shirt." Trial Court Opinion, 1/23/2025, at 9. I interpret this observation to implicate overbreadth, in that the warrant authorized the seizure of all black t-shirts, whereas probable cause would, at most, be limited to the specific shirt captured in the Instagram video. Cases examining search warrants for clothing typically involve either distinct items that tend to identify an individual or clothing that has intrinsic evidentiary value. *See, e.g., Commonwealth v. Butler*, 291 A.2d 89, 90 (Pa. 1972) (addressing a search warrant for bloodstained clothing). As the trial court observed, the affidavit failed to establish either possibility. *See* Trial Court Opinion, 1/23/2025, at 8 ("There was nothing distinguishing about the clothing, nor anything to suggest that it was probable that there would be forensic evidence on the shirt."). There was nothing identified as distinguishing this black t-shirt or any details included from which I can conclude that the Commonwealth established probable cause to search for clothing. As such, in my view, the trial court did not err in this regard.

Turning to the cell phone, the Majority finds error in the trial court's suppression thereof, finding its presumption that Curry would not be home during the execution of the search warrant lacked record support and that "a common-sense approach" gave rise to "a fair probability that he would be

present and with his phone in the home during the search." Majority Mem. at 12-13.

As the trial court observed, the United States Supreme Court has recognized that a cell phone "typically remains with the owner" and "generally [is] not stored in a person's residence." Trial Court Opinion, 1/23/2025, at 7 (citing *Riley v. California*, 573 U.S. 373, 385 (2014)). From both personal experience and casual observation, the *Riley* Court's quip that phones "are now such a pervasive and insistent part of daily life that the proverbial visitor from Mars might conclude they were an important feature of human anatomy" is even truer now than it was over a decade ago. *Riley*, 573 U.S. at 385. Although the Majority is critical of the trial court's presumption that Curry would not be home during the execution of the warrant, in my view, there is no support for the Majority's presumption that he would be. To the contrary, the affidavit of probable cause contains few details about Curry's visits to the residence. As we have little to no information about when Curry was generally in the house, and the affidavit was silent as to whether police intended to execute the warrant during whatever time Agent Boyd may have believed Curry to be home, I disagree with the Majority's conclusion that common sense dictates that Curry would likely be present during the search of the East Clementine residence.

For the foregoing reasons, I would affirm the trial court's decision. I therefore respectfully dissent.