J-A29006-25

2025 PA Super 288

COMMONWEALTH OF PENNSYLVANIA　：　IN THE SUPERIOR COURT OF
　　　　　　　　　　　　　　　　：　　　　　PENNSYLVANIA
　　　　　　　　　　　　　　　　：
　　　　　　　　v.　　　　　　　：
　　　　　　　　　　　　　　　　：
　　　　　　　　　　　　　　　　：
BRENDON EUGENE TROUTMAN　　　：
　　　　　　　　　　　　　　　　：
　　　　　Appellant　　　　　　：　No. 179 WDA 2025

Appeal from the Judgment of Sentence Entered January 22, 2025
In the Court of Common Pleas of Jefferson County Criminal Division at
No(s):  CP-33-CR-0000448-2023

BEFORE:  OLSON, J., DUBOW, J., and BENDER, P.J.E.

OPINION BY DUBOW, J.:　　　　　　　　　**FILED: December 24, 2025**

Appellant, Brendon Eugene Troutman, appeals from the January 22, 2025 judgment of sentence entered in the Jefferson County Court of Common Pleas following Appellant's conviction of 449 counts related to Child Pornography.  Appellant challenges the court's denial of his suppression motion, claiming that the search warrant for his residence was not supported by probable cause and that the investigating officers subjected him to a custodial interrogation without providing **Miranda**[1] warnings.  After careful review, we affirm.

The relevant facts and procedural history are as follows.  On October 19, 2022, the Pennsylvania State Police received a CyberTipline report from the National Center for Missing and Exploited Children generated by Discord, a communications application, indicating that one of its accounts had uploaded

---

[1] **Miranda v. Arizona**, 384 U.S. 436 (1966).

nine child pornography files on October 1, 2022. Discord provided details regarding the account including the following information: the Internet Protocol ("IP") address, the email address associated with the account, and the username associated with the account. Both the email address and username included the terms "Cronus" or "Chronus." Affidavit of Probable Cause, 7/19/23, at 7. The State Police discovered that the "Cronus" email address was also associated with a YouTube channel titled "CronusMC," which included a video of a young man the officers later determined to be Appellant. *Id.* at 8.

Investigators additionally discovered that the IP address used to upload the child pornography had been assigned by Comcast to its internet subscriber, Clarence Troutman, for the physical location at 129 Albion Road in Punxsutawney. Clarence Troutman was a 76-year-old man. Further investigation revealed that "multiple other people with the Troutman name" lived at 115 Albion Road, which was across a driveway and approximately 75 feet from 129 Albion Road. *Id.* at 7-8. One of the email addresses associated with the Comcast account was "brendon2001," which corresponded with Appellant's first name and the year of his birth. Appellant's driver's license indicated that he resided at 115 Albion Road.

On July 19, 2023, Trooper Robert Whyel obtained search warrants for 115 and 129 Albion Road, setting forth the above information in his affidavits of probable cause. On July 21, 2023, at 6:12 a.m., Trooper Whyel and Corporal Bernard Novak executed the warrant on 115 Albion Road but not 129

Albion Road. Appellant testified that officers woke him from his bed, provided him shorts and a t-shirt, and directed him to the front porch. N.T. Suppr. Hr'g, 5/31/21, at 47-48.

While other armed officers searched the house, Trooper Whyel and Corporal Novak questioned Appellant alone on the porch for approximately one hour. Believing that Appellant was not in custody, the officers did not provide Appellant with *Miranda* warnings and did not cease questioning when Appellant requested to speak with an attorney approximately ten minutes into the interview. *Id.* at 21-22, 38-39.

Appellant admitted that the officers informed him that he did not have to speak with them, that he was not under arrest, and that he was free to leave. *Id.* at 54-56. Appellant maintained, however, that he did not feel free to leave, claiming that the armed officers stood between him and his exit off the porch. *Id.* at 57-58. Trooper Whyel, in contrast, testified that he "purposefully" positioned himself to allow Appellant a pathway to leave the porch. *Id.* at 36.

Following the questioning on the porch, the officers directed Appellant to the living room where his mother was sitting. The officers requested and Appellant provided the passcode to his laptop, which other officers found during the search. Appellant asserted that the officers did not inform him that he could decline to give the password or that any information on the laptop could be used against him. *Id.* at 52-53. Trooper Whyel acknowledged that, based on his understanding of the technology available at the time, the officers

would not have been able to access the encrypted contents without the passcode. *Id.* at 40.

On September 7, 2023, the Commonwealth charged Appellant with numerous counts involving child pornography, including those related to the evidence found on Appellant's laptop.

On January 18, 2024, Appellant filed a suppression motion raising two issues. First, he claimed that the affidavit did not establish probable cause to support the issuance of the search warrant for his residence at 115 Albion Road. Second, Appellant argued that his statements should be suppressed because the officers subjected him to a custodial interrogation without providing him with *Miranda* warnings.

On May 31, 2024, the court held a suppression hearing at which Trooper Whyel and Appellant testified. The court also admitted into evidence the Commonwealth's recording of the interview on the porch. On August 27, 2024, the trial court denied suppression in an opinion and order.

On September 26, 2024, following a bench trial, the court found Appellant guilty of over 400 counts of Possession of Child Pornography, 30 counts of Disseminating Photographs/Films of Child Pornography, and one count of Criminal Use of Communication Facility.[2]

On January 22, 2025, the trial court imposed on Appellant consecutive sentences of 10 to 30 days incarceration for nearly all the counts of Possession

_____

[2] 18 Pa.C.S. §§ 6312(d), 6312(c), and 7512(a), respectively.

of Child Pornography and merged the sentences for the other crimes, for an aggregate sentence of approximately 11½ to 34½ years.

On February 13, 2025, Appellant filed a notice of appeal. Appellant and the trial court complied with Pa.R.A.P. 1925, with the court relying upon its August 27, 2024 opinion and order denying suppression, which we reference as the "Trial Court Opinion."

Appellant presents the following questions on appeal:

1. If there is probable cause indicating that criminal activity may have taken place at a particular location in the past, can law enforcement rely on this suspicion to later justify searching the defendant's residence, a different and distinct address, without first demonstrating a substantial criminal nexus beyond his identity as a possible suspect?

2. Does the functional equivalent of custodial detention exist when law enforcement wakes a 22-year-old defendant shortly after 6:00 a.m., removes him from his childhood bedroom, separates him from his parents, and blocks him from his only point of egress with two armed State Police Officers, while ignoring his attempts at invoking his right to counsel, subsequently requiring a knowing[], intelligent[,] and voluntar[y] waiver of *Miranda*?

Appellant's Br. at 5-6 (suggested answers omitted).

Both of Appellant's issues challenge the denial of his suppression motion. In such cases, our standard of review "is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." *Commonwealth v. Jones*, 988 A.2d 649, 654 (Pa. 2010). While we defer to the court's factual determinations when supported by the record, "we are not

bound by the suppression court's legal rulings, which we review *de novo.*" ***Commonwealth v. Briggs***, 12 A.3d 291, 320-21 (Pa. 2011).

Our scope of review is limited to "the evidence presented at the suppression hearing." ***Commonwealth v. Harlan***, 208 A.3d 497, 499 (Pa. Super. 2019). We "consider only the Commonwealth's evidence and so much of the defense's evidence as remains uncontradicted when read in the context of the suppression hearing record as a whole." ***Commonwealth v. Turpin***, 216 A.3d 1055, 1060 (Pa. 2019) (citation and internal quotation marks omitted).

Addressing Appellant's challenge to the search warrant, we reiterate that "[n]o search warrant shall issue but upon probable cause supported by one or more affidavits[.]" Pa.R.Crim.P. 203(B). "Probable cause exists where, based upon a totality of the circumstances set forth in the affidavit of probable cause, . . . there is a fair probability that evidence of a crime will be found in a particular place." ***Commonwealth v. Fletcher***, 307 A.3d 742, 746 (Pa. Super. 2023) (citation omitted).

When determining whether to issue a warrant, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision" as to whether the affidavit establishes probable cause. ***Commonwealth v. Gray***, 503 A.2d 921, 925 (Pa. 1985). In turn, "the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." ***Id.*** (citation, alterations, and internal quotation marks omitted). "We must limit our inquiry to the information within the four

corners of the affidavit submitted in support of probable cause when determining whether the warrant was issued upon probable cause." **Harlan**, 208 A.3d at 505 (citation omitted). "The burden is on the Commonwealth to show that the magistrate had a substantial basis for concluding probable cause existed." **Commonwealth v. Leed**, 186 A.3d 405, 413 (Pa. 2018).

Appellant maintains that the trial court abused its discretion in refusing to suppress the evidence derived from the search of 115 Albion Road. Appellant's Br. at 16-27. While conceding that the affidavit likely established probable cause to search 129 Albion Road, which was the physical location assigned to the relevant IP address, Appellant claims that the affidavit failed to establish probable cause to search his residence at 115 Albion Road. **Id.** at 19-20. Appellant invokes the analysis in **Commonwealth v. Nicholson**, 262 A.3d 1276 (Pa. Super. 2021). Appellant's Br. at 23-27

In **Nicholson**, officers obtained a search warrant for the suspect's home after observing the suspect twice engage in a controlled drug buy in his vehicle; after each drug buy the suspect drove his vehicle back to his residence and entered it. 262 A.3d at 1278-79. The affidavit indicated that "a drug dealer typically stores drugs, weapons and other contraband in his home, among many other places." **Id.** at 1279. This Court concluded that the stated information did not establish the requisite "substantial nexus between the drug buys and Nicholson's residence[,]" where the evidence pointed to Nicholson using his vehicle as his base of operations. **Id.** at 1281. In so doing, we reiterated that "probable cause to believe that a man has committed

a crime on the street does not necessarily give rise to probable cause to search his home." *Id.* at 1280 (citation and emphasis omitted). We held that "there must be something in the affidavit that links the place to be searched directly to the criminal activity." *Id.* at 1282.

Applying the analysis in *Nicholson*, Appellant maintains that the court should have granted suppression because the affidavit "did not provide any specific and articulable facts, nor expansive training and experience statements establishing a substantial nexus or facts linking the suspected criminal activity at 129 Albion Road with 115 Albion Road." Appellant's Br. at 27 (internal quotation marks omitted).

We disagree. We first distinguish the averments in the instant case from those in *Nicholson*, where the only connection between the crimes and the residence was that the suspect returned to the residence after committing the crimes in his vehicle. In contrast, Trooper Whyel's affidavit set forth a substantial basis to believe that evidence of child pornography would be found at 115 Albion Road, as well as 129 Albion Road.

Specifically, as the suppression court recognized, the affidavit established a fair probability that Appellant was the individual that uploaded the child pornography to the Discord account, given the links between the Discord account and his YouTube account, as well as the location of his residence within 75 feet "across a driveway" from the IP address from which the child pornography had been uploaded. Affidavit of Probable Cause at 7-8; *see also* Trial Ct. Op., 8/27/24, at 2. Moreover, Trooper Whyel averred

- 8 -

that, based upon his knowledge and training, possessors of child pornography "sometimes possess and maintain their copies of child pornographic material in the privacy and security of their home" and that "they typically prefer not to be without their child pornography for any prolonged time period[.]" Affidavit of Probable Cause at 9. Based upon this information, we determine that record supports the suppression court's "common sense" conclusion that "the relevant electronic storage devices would likely be found in [Appellant's] physical possession [at his residence] rather that at the address associated with the IP address[.]" Trial Ct. Op. at 2. Thus, we affirm the court's denial of suppression where the affidavit provided probable cause to believe that Appellant would possess child pornography in his residence at 115 Albion Road.

Turning to Appellant's claim that the court should have suppressed his statements based upon the officers' failure to provide *Miranda* warnings, we reiterate that law enforcement must provide *Miranda* warnings whenever an individual is subject to a "custodial interrogation." *Commonwealth v. Baker*, 963 A.2d 495, 500 (Pa. Super. 2008). Our Supreme Court explained that "[a]n individual is in custody if he is physically denied his freedom of action in any significant way or is placed in a situation in which he reasonably believes that his freedom of action or movement is restricted by the interrogation." *Commonwealth v. Cooley*, 118 A.3d 370, 376 (Pa. 2015) (citation and internal quotation marks omitted). "The standard for determining whether an encounter is custodial is an objective one, focusing

on the totality of the circumstances with due consideration given to the reasonable impression conveyed to the individual being questioned." *Id.*

Appellant asserts that the following constituted a custodial interrogation:

> In this case, the Pennsylvania State Police placed [Appellant] in the equivalent state of custodial detention when they awoke him from his bed a little after 6:00 a.m., separated him from his parents, blocked his only path of terminating the encounter while armed, all while admitting they ignored and ran roughshod over Mr. Troutman's invocation of his right to counsel.

Appellant's Br. at 14-15. Appellant contends that "[t]he troopers offered [Appellant] perfunctory lip service that he did not have to answer their questions but curiously failed to advise him of his right to remain silent, that anything he said would be used against him, or his right to counsel to aid him in deciding whether to answer their questions." *Id.* at 41-42. Appellant emphasizes that the officers did not advise Appellant that he could refuse to provide the passcode for his computer. *Id.* at 40. Appellant, therefore, argues that his statements and the evidence obtained from the laptop should be suppressed due to the officers' violation of his constitutional rights under the Fifth Amendment to the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution. *Id.* at 28-42.

Appellant relies upon *Commonwealth v. Zogby*, 689 A.2d 280 (Pa. Super. 1997), in which this Court affirmed the suppression of a defendant's statements where police woke a suspect from his bed in the early morning and immediately began to question him about his involvement in criminal

activity. Appellant's Br. at 32-33. In *Zogby*, officers investigating a hit and run accident arrived at Zogby's residence at approximately 4:00 a.m., where a roommate admitted the officers and directed them to Zogby's room. 689 A.2d at 281. The officers directed Zogby to get out of bed and to accompany them to the sidewalk to discuss damage to his vehicle and a road sign. *Id.* After smelling alcohol on Zogby, the officers obtained his consent to a "preliminary breath test," which he failed. *Id.* The officers then placed him under arrest. *Id.*

This Court opined that the officers' actions of "entering [Zogby's] bedroom, one of the areas of greatest privacy, rousing him from a sound sleep and instructing him to dress and go outside are highly intrusive and suggest a will on the part of the police officer that would not be denied." *Id.* at 283. We, therefore, concluded that the situation constituted a custodial detention as Zogby "would reasonably feel that he had no choice but to get dressed, go outside[,] and answer the officer's questions." *Id.* Accordingly, we affirmed the court's suppression of Zogby's statements in the absence of *Miranda* warnings. *Id.*

A key distinction exists, however, between the instant case and *Zogby*. Specifically, unlike *Zogby*, the officers repeatedly informed Appellant that he did not have to answer their questions and that he was free to leave. Trial Ct. Op. at 4. Indeed, while Appellant testified that he did not feel free to leave, the suppression court opined that Appellant's belief was an "unreasonable conclusion." *Id.* We agree that the record supports the trial court's conclusion

that Appellant was not subject to a custodial interrogation as the officers repeatedly informed him that he was not required to speak to them and instead that he was free to leave. *Id.* Accordingly, we affirm the court's refusal to suppress Appellant's statements and the evidence recovered from Appellant's laptop.

Judgment of sentence affirmed.

President Judge Emeritus Bender joins the opinion.

Judge Olson concurs in result.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 12/24/2025