J-S33038-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| AARON CURRY | : | No. 2095 EDA 2024 |

Appeal from the Order Entered July 24, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0007330-2023

BEFORE: BOWES, J., NICHOLS, J., and BECK, J.

MEMORANDUM BY BOWES, J.: **FILED JANUARY 21, 2026**

The Commonwealth appeals from the order granting the suppression motion filed by Aaron Curry ("Appellee"). We reverse and remand for further proceedings.

We glean the following facts from the affidavit of probable cause offered to obtain the search warrant at issue in the instant appeal. On July 10, 2023, Special Agent Kyle Boyd of the Pennsylvania Office of the Attorney General viewed a livestreamed Instagram video from an account he believed belonged to Appellee, who was pictured in several of the profile's photos. During the stream, Appellee was wearing a plain black t-shirt and brandishing a black semi-automatic Glock pistol with laser and flashlight attachments. Agent Boyd deemed the firearm to be authentic. He was also aware that Appellee was

prohibited from owning a firearm pursuant to a prior conviction for possession with intent to distribute narcotics ("PWID").

Utilizing registration information that Appellee provided to the Philadelphia County Probation Office, the agent conducted surveillance for two days at 2029 Rush Street in the City of Philadelphia. While he observed various individuals enter and exit the residence, he never saw Appellee. Agent Boyd then confirmed with the Pennsylvania State Welfare Office that Appellee received benefits at 661 East Clementine Street. He surveilled that house on July 13, 14, and 17, 2023, and witnessed Appellee frequent the residence, sometimes with a child. The agent concluded that the Rush Street address was fraudulent, and the East Clementine home was Appellee's actual residence. Agent Boyd also repeatedly observed him exit that dwelling and proceed to a nearby street corner to engage in behavior that the agent recognized as drug activity. He further watched Appellee on that corner use a cellphone to livestream a second video on Instagram from the same account as the first.

Agent Boyd then outlined the following in his affidavit of probable cause:

Based upon your affiant's training and experience, your affiant knows individuals involved in criminal activity, specifically narcotics trafficking[,] frequently conceal their true residences in order to avoid law enforcement detection.

Your affiant knows that firearms are durable goods that are generally kept over the long term and are routinely stored in one's own residence and vehicles. Your affiant knows the fact that [Appellee]'s criminal history prohibits him from legally purchasing firearms strengthens your affiant[']s belief that [Appellee] would

- 2 -

retain possession of any and all firearms illegally obtained. Additionally, your affiant knows through his experience, that individuals who are engaged in the sale of illegal narcotics often possess firearms to protect themselves. Furthermore[,] your affiant knows that from his training and experience that probationers often give address[es] that they are not affiliated with as clean locations for county probation to check while continuing their criminal activity.

Based upon the facts and circumstances, your affiant respectfully requests the approval of this search and seizure warrant to search [the East Clementine residence for] firearms, firearm paperwork, ammunition, proof of residence, telephone utilized to record the crime and clothing worn during the commission of the firearms offense[,] any and all proof of residency as well as safes/lockeboxes [*sic*] that can contain any of the above listed item[s].

Affidavit of Probable Cause, 7/18/23, at 4-5 (some capitalization altered, pagination provided).

The warrant was issued, and upon execution the agent and other officers recovered multiple firearms, controlled substances, a cell phone, and paperwork. Appellee was charged with several counts related to his illegal possession of the firearms and drugs, which included heroin, fentanyl, and Xylazine. He filed a motion to suppress all items found in his home, maintaining that the affidavit was "insufficient to establish probable cause that contraband or evidence of a crime was inside of the residence." Motion to Suppress, 3/14/24, ¶ 4. Specifically, Appellee asserted that the was no "nexus between the crime in question and the residence that was searched." *Id*. at ¶ 5. The court scheduled oral argument, and at the conclusion took the matter under advisement.

The court subsequently granted Appellee's motion. The Commonwealth timely appealed and certified that the court's order substantially handicapped the prosecution. *See* Pa.R.A.P. 311(d). The court and the Commonwealth further complied with the requirements of Pa.R.A.P. 1925. The Commonwealth presents the following question for our determination:

> Did the lower court err by suppressing the evidence recovered from [Appellee]'s home, where the four corners of the search warrant and accompanying affidavit plainly demonstrated a substantial basis for the issuing magistrate's finding of probable cause that [Appellee] had in his home a firearm he was prohibited from possessing and other evidence connected to his unlawful possession of that firearm?

Commonwealth's brief at 7.

We begin with an overview of the applicable legal precepts:

> When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts.
>
> Our standard of review is restricted to establishing whether the record supports the suppression court's factual findings; however, we maintain *de novo* review over the suppression court's legal conclusions.

*Commonwealth v. Floyd*, 313 A.3d 1061, 1064 (Pa.Super. 2024) (cleaned up).

Rule 201 of the Pennsylvania Rules Criminal Procedure provides, in relevant part, that:

A search warrant may be issued to search for and to seize:

**(a)** contraband, the fruits of a crime, or things otherwise criminally possessed;

**(b)** property that is or has been used as the means of committing a criminal offense; [or]

**(c)** property that constitutes evidence of the commission of a criminal offense[.]

Pa.R.Crim.P. 201.

A warrant must be supported by probable cause, which "exists where the facts and circumstances within the affiant's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that a search should be conducted." *Commonwealth v. Jones*, 988 A.2d 649, 655 (Pa. 2010) (cleaned up). A search warrant must also "describe the items as specifically as is reasonably possible." *Commonwealth v. Jacoby*, 170 A.3d 1065, 1082 (Pa. 2017) (cleaned up).

As this Court has explained, with respect to search warrant applications:

Pursuant to the totality of the circumstances test . . ., the task of an issuing authority is simply to make a practical, common-sense decision whether, given all of the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. It is the duty of a court reviewing an issuing authority's probable cause determination to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In so doing, the reviewing court must accord deference to the issuing authority's probable cause determination, and must view the information offered to establish probable cause in a common-sense, non-technical manner.

Further, a reviewing court is not to conduct a *de novo* review of the issuing authority's probable cause determination, but is simply to determine whether or not there is substantial evidence in the record supporting the decision to issue the warrant.

. . . .

A grudging or negative attitude by reviewing courts towards warrants is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant; courts should not invalidate warrants by interpreting affidavits in a hypertechnical, rather than a common[-]sense, manner.

*Jones*, 988 A.2d at 655 (cleaned up).

Additionally, we have held that "probable cause to believe that a man has committed a crime on the street does not necessarily give rise to probable cause to search his home." *Commonwealth v. Nicholson*, 262 A.3d 1276, 1280 (Pa.Super. 2021) (cleaned up). Rather, "[t]he affidavit of probable cause must establish a substantial nexus between the suspect's home and the criminal activity or contraband sought to permit the search of the home." *Id*. (cleaned up). That is to say, "there must be something in the affidavit that links the place to be searched directly to the criminal activity." *Id*. In that vein, an officer's professional experience is relevant to a probable cause analysis "where the officer can demonstrate a nexus between his experience and the search, arrest, or seizure of evidence." *Id*. (cleaned up).

In its Rule 1925(a) opinion, the trial court primarily relied upon our High Court's decision in *Jacoby*. There, the trial court found that probable cause supported a search warrant for Jacoby's residence, issued fifteen months after

the murder in question, to obtain a firearm used to kill the victim. The ***Jacoby*** Court, though, criticized that the warrant was based only on the assumption that "it was 'reasonable' to believe the murder weapon was secreted in Jacoby's house after such a substantial period of time because Jacoby was not permitted to own a weapon as a felon, and therefore was likely to retain the weapon due to the difficulty in procuring another one in light of his felon status." ***Jacoby***, 170 A.3d at 1083. Our High Court stated that "[p]robable cause to search Jacoby's home must be evaluated based upon the circumstances of his case, his behavior, and any nexus to the location to be searched, but not upon categorial assumptions." ***Id***. at 1085. Without any other evidence that the weapon was likely to be present in Jacoby's home, the Court held that the "trial court approach shortcuts this bedrock inquiry with general assumptions about human behavior, untethered to the actual facts at hand, and was erroneous." ***Id***.

Notwithstanding our Supreme Court's conclusion, we have explained that "[t]he probable cause formulation . . . permits a court to consider probabilities in particular factual contexts, and courts examining probable cause tend to credit, at least in some circumstances, inferences of human behavior related to the crimes at issue." ***Commonwealth v. Ani***, 293 A.3d 704, 725 (Pa.Super. 2023) (cleaned up). We recognized that the ***Jacoby*** Court did not "completely foreclose some consideration of the probability that a particular offender will behave in certain ways with respect to addressing

whether a sufficient nexus has been established[.]" *Id*. at 727. Instead, this Court clarified that *Jacoby* only prohibited "categorical assumptions" as the "**sole** justification for probable cause." *Id*. (emphasis added).

Although the trial court concluded that the affidavit "established probable cause that [Appellee] was residing at the address in question" and "illegal activity in that [Appellee], having a conviction making him prohibited from possessing a firearm, was observed in an internet (social media) livestream holding a handgun," it nevertheless determined that the warrant failed to justify a search of the home for the firearm, t-shirt, and cellphone because it failed to provide a sufficient nexus between any of the objects and the East Clementine residence. *See* Trial Court Opinion, 1/23/25, at 6. The trial court explained that Agent Boyd's statement that "firearms are durable goods that are generally kept over the long term and are routinely stored in one's own residence and vehicles" was improperly used as the "sole basis" to search the residence for the gun. *Id*. (citing Affidavit of Probable Cause, 7/18/23, at 4). The court held that such a "categorial assumption" was too similar to the statement in *Jacoby*, which our High Court rejected as a basis to establish a "nexus . . . for the purposes of demonstrating probable cause." *Id*. at 6-7 (citing *Jacoby*, 170 A.3d at 1085).

The court also determined that the t-shirt to be searched for was not described with specificity, and neither it nor the cellphone contained any evidentiary value. *Id*. at 7-9. It stated that the description of the shirt had

nothing "distinguishing" about it and therefore was not described "as nearly as may be." *Id*. at 8-9 (cleaned up). The court additionally noted that "[n]othing in the [a]ffidavit established the evidentiary value of the black t-shirt aside from the fact that it was worn while [Appellee] held the gun." *Id*. at 8. It further concluded that the search for the phone was unsupported by probable cause because "a cell phone is generally not stored in a person's residence, [and] it typically remains with the owner." *Id*. at 7. Also, the court explained that the affidavit failed to state that the phone would contain the livestreamed video. *Id*. at 8.

The Commonwealth maintains that "the probability of a connection between [Appellee]'s home and the gun he was observed possessing was apparent from the facts within the four corners of the affidavit." Commonwealth's brief at 15. It explains that Agent Boyd "detailed a nearly week-long police surveillance of [Appellee], both over social media and in person." *Id*. The Commonwealth asserts that the trial court "failed to give due deference to the neutral magistrate's evident adoption" of the inference that Appellee was concealing his criminal activity at his residence by providing the probation office with a fraudulent address, flashing a firearm on a live broadcast, and continuing to engage in drug activity. *Id*. at 16-17. Further, it contends that *Jacoby* is inapplicable here because "the lapse of time between the crime and the issuance of the warrant was only eight days – far

less than the lapse of time between the crime and the execution of the warrant in **Jacoby**." **Id**. at 18.

Additionally, the Commonwealth avers that the court erred in concluding that the warrant did not support a search for the t-shirt and cellphone. With respect to the t-shirt, the Commonwealth explains that Appellee wore it in the video and that "clothing items are the type of evidence likely to be stored at a person's home." **Id**. at 20. As to the cellphone, the Commonwealth argues that it was used to record the commission of the crime, and "enough information in the affidavit [supported] the likelihood that [Appellee] would be present with his cellphone in the home when the warrant was executed." **Id**. at 19-20.

We conclude that the court erred in determining that the affidavit was unsupported by probable cause. First, as to the firearm, the affidavit was not legally insufficient merely because it included a generalized statement about human behavior. **See Ani**, 293 A.3d at 725-27. The affidavit bears out, rather, that the agent properly augmented this averment with distinct observations of Appellee. Agent Boyd knew from his professional experience that repeat offenders typically provide fake addresses to probation offices in order to continue engaging in illegal activity, narcotics traffickers tend to keep guns for self-protection, and firearms are usually stored in one's home. As to Appellee specifically, Agent Boyd was cognizant that he was prohibited from possessing guns due to a previous conviction for PWID, discovered that

Appellee provided a fake address to the probation office, watched him engage in activity consistent with narcotics transactions, and witnessed Appellee brandish a firearm during a livestreamed video on social media. Critically, Agent Boyd's uninterrupted observation of Appellee leaving the East Clementine home, walking to a nearby street corner, engaging in suspected drug transactions, and livestreaming another video provided the necessary nexus between that address and Appellee's criminal activity. Additionally, unlike the warrant in **Jacoby**, which was executed fifteen months after the commission of the crime, Agent Boyd searched the East Clementine home within eight days of watching the livestream.

Accordingly, Agent Boyd properly applied his professional knowledge to the fresh information he gleaned from his surveillance of Appellee to provide the magistrate with specific "facts and circumstances . . . to warrant a man of reasonable caution in the belief that a search" of Appellee's home "should be conducted" to obtain the illegally possessed firearm. **See Jones**, 988 A.2d at 655 (cleaned up). In other words, the agent supplied the requisite nexus between Appellee's illegal possession of a firearm to the East Clementine residence. **See Nicholson**, 262 A.3d at 1280.

Further, the trial court erred in determining that the search for Appellee's clothing worn during the commission of the crime was unsupported by probable cause and lacked evidentiary value and specificity. The shirt was relevant because Agent Boyd observed Appellee sporting a black t-shirt during

the livestreamed video when he displayed the firearm. *See* Pa.R.Crim.P. 201(c) (authorizing search warrants for "property that constitutes evidence of the commission of a criminal offense"). Notably, Appellee does not argue that his t-shirt had any unique design, logo, or other distinguishing factor that the agent failed to note. *See generally* Appellee's brief & N.T. Suppression, 5/22/24. If Appellee wore a plain black t-shirt during the stream, Agent Boyd's description was as specific as "reasonably possible." *Jacoby*, 170 A.3d at 1082. A common-sense approach supports the conclusion that there was a fair probability that this shirt would be stored in Appellee's home.

Finally, the court erred in determining that the cellphone lacked evidentiary value and the search for it was unsupported by probable cause. Contrary to the court's belief, Agent Boyd did not request to analyze the contents of the cellphone. He only sought the phone that Appellee "utilized to record the crime." *See* Affidavit of Probable Cause, 7/18/23, at 5. *See also Commonwealth v. Bowens*, 265 A.3d 730, 747 (Pa.Super. 2021) (*en banc*) ("[I]t is well-settled that, even where a cell phone has already been properly seized, a search of the contents of the phone requires a warrant."). Appellee used a cellphone to broadcast the video on social media. *See* Pa.R.Crim.P. 201(b) (permitting a search warrant for "property that is or has been used as the means of committing a criminal offense"). The trial court presumed that Appellee would not be home during execution of the warrant, and thus the cellphone would have been elsewhere. However, this inference

is unsupported by the record because Appellee resided at the East Clementine dwelling. Utilizing a common-sense approach, there was a fair probability that he would be present and with his phone in the home during the search.

Based on the foregoing, the trial court's legal determinations were erroneous. Granting deference to the magistrate's probable cause determination, and viewing the affidavit in a "common-sense, non-technical manner," there was a "substantial basis" to grant the warrant to search the East Clementine residence. *See Jones*, 988 A.2d at 655. Accordingly, the order granting the suppression motion is reversed and the matter remanded for further proceedings.

Order reversed and remanded for further proceedings. Jurisdiction relinquished.

Judge Nichols joins this Memorandum.

Judge Beck files a Dissenting Memorandum.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 1/21/2026